STATE OF MISSOURI, Respondent, v. ELIE GARNER, Appellant, No. 41662—226 S. W. (2d) 604.

Division Two, February 13, 1950.

*Silas E. Garner* for appellant.

*J. E. Taylor,* Attorney General, and *Lawrence L. Bradley,* Assistant Attorney General, for respondent.

52

ELLISON, P. J.—The appellant was convicted by a jury's verdict in the St. Louis city circuit court of "assault to do great bodily harm as charged in the information." The State says the information was drawn under Sec. 4409, R. S. 1939, Mo. R. S. A. The appellant contends the case was "prosecuted" under Sec. 4408. The jury assessed his punishment at a fine of $100 and imprisonment in the City Jail for three months. But nevertheless the crime was a felony under either Sec. 4409 or 4408, because it was *punishable* by imprisonment in the penitentiary, Sec. 4864, R. S. 1939, Mo. R. S. A., and we therefore have appellate jurisdiction. The alleged assault consisted of attempting to run down a policeman in a public street "with a certain weapon, to wit"—a speeding automobile.

Appellant makes nine assignments of error on this appeal, urging all of them as his brief states, but relying chiefly on assignments 1, 4 and 5. The first of these complains of the overruling of his motion for a directed verdict; the second, of the overruling of his "special instruction"; and the last of the trial court's action in forcing him to trial without giving him time to bring two named witnesses into court. The six other assignments will be mentioned later.

First, a brief review of the evidence. The police officer testified he was standing at the intersection of Compton and Laclede Avenues in St. Louis about 3 a. m. on December 13, 1947. There were street lights on all four corners. He observed a black automobile, with only one headlight lit, approaching eastbound about three blocks away on Laclede at a continuous speed of 50 or 60 miles per hour. When it

was about a block away he stepped from the sidewalk into the street and with his flashlight continuously signaled it to stop. But instead, the automobile when about 40 feet away swerved toward him, and he jumped 4 or 5 feet to avoid it. In so doing he landed on his back, knocking the breath out of him, and remained lying on the pavement for 3 to 4 seconds. On cross-examination he said it might have been 4, 5 or 6 seconds, or maybe even 4, 5 or 6 minutes, but his final opinion was that it was "maybe" 4 or 5 minutes or seconds.

After he had picked up his hat and flashlight but was still out on the pavement, he heard the roar of a motor and saw the same car returning west on Laclede. It was a Cord car with a California license. Later on cross-examination he said it was coming about 35 miles per hour when it approached him, swerving about 25 feet in his direction. He jumped out of the way but the car brushed his coat and he fell to his knees, bruising his leg so as to require hospital treatment. He fired three shots with his revolver, and later found one of them had punctured a back fender of the car. Within about 20 minutes, after a police radio broadcast, the occupants of the car were arrested in a part of the city over a mile away. At the police station the appellant admitted he saw the officer waving his flashlight, but said he couldn't stop and went on by, intending to throw the gears into reverse, but by mistake went into high forward gear. But he gave no reason for making the westbound trip.

The appellant's version of the occurrence was entirely different. As we understand his testimony he admitted that in the early morning of the date of the occurrence detailed by the police officer he was driving east on Laclede; stopped at the stop sign on Compton, and after he started up heard a whistle which he thought had been given by an officer on that beat whom he knew. He continued on to an eating place where the three occupants of the automobile ate sandwiches, and then drove back on the same street, Laclede. At the point of the prior occurrence they heard a noise like an automobile backfiring. [This apparently referred to the shots fired by the prosecuting officer.] They continued on until they were arrested.

 The basis of appellant's first assignment—that the trial court erred in overruling his motion for a directed verdict—is two-fold. First, he argues an automobile is not a "deadly weapon" within the meaning of Sec. 4423, R. S. 1939, Mo. R. S. A., and therefore the State failed to make a case "of intentional assault to do great bodily harm." His second contention is that the rate of speed at which the automobile was traveling when it approached the officer the second time and struck him—35 miles per hour according to the officer's own testimony—was so inconsiderable as to repel any idea of an intent on his part to do great bodily harm.

On the first point, Sec. 4423 referred to by appellant is the concealed weapon statute. The opening provision thereof makes it a felony for any person to "carry concealed upon or about his person a dangerous or deadly weapon of any kind or description." The next provision similarly declares if any person shall go into any place of public assemblage (speaking generally), having upon or about his person, concealed or exposed—then the statute enumerates a great number of comparatively small weapons that could be so concealed or exposed, such as firearms, knives, knucks, etc. Appellant contends an automobile is not a weapon of that character, and of course it is not. But it does not follow that an automobile cannot be used as a weapon, or even a dangerous or deadly weapon, in an assault. The contrary has several times been declared of a moving automobile. 11 Words & Phrases (Perm. Ed.) "Dangerous Weapon", p. 81; "Deadly Weapon", p. 131; ibid., "Weapon", p. 778; State v. Brinkley, 354 Mo. 1051, 1066(1), 193 SW. (2d) 49, 53(1).

Appellant's second point under this first assignment is that the prosecuting officer's testimony was self-destructive. This is asserted on the theory that the automobile could not have passed him going east at the speed of 50 or 60 miles per hour, at which time he fell on the pavement; and then have returned west, brushed his coat and knocked him down again—all within the 4 to 6 seconds during which the officer testified he lay on the pavement and then got up as the automobile swerved and approached him at a speed of 35 miles per hour. But the jury were not bound to believe the appellant's testimony that in the meantime he and his associates had stopped at a distant place to eat lunch. So far as the State's evidence was concerned there was no evidence as to how *far* east the automobile went, or when it reduced its speed to 35 miles per hour. In the officer's distressed condition he may have been, and apparently was, in no condition to give an accurate estimate of the time elapsed, but he did state as a fact that the automobile going east and the one which struck him returning west were the same vehicle, and that appellant then was driving it. We think this evidence made a case for the jury.

Appellant's next stressed assignment, No. 4, complains of the court's refusal of his "special instruction," lettered "A" in the record. The tendered instruction would have required the jury to find the appellant ran the policeman down *with malice aforethought*. That is a necessary element of the felony under Sec. 4408, but not under Sec. 4409. Likewise, Sec. 4408 requires the assault to be committed *with a deadly weapon or by any other means or force likely to produce death or great bodily harm*, whereas Sec. 4409 does not. The maximum punishment under Sec. 4408 is life imprisonment in the penitentiary, and the minimum two years, whereas the maximum punishment under Sec. 4409 is five years imprisonment in the

penitentiary and the minimum a jail sentence for three months and a $100 fine. The information in this case did not charge malice aforethought, or use of a deadly weapon, but only of "a certain weapon"; and the punishments authorized by the court's instructions were only those under Sec. 4409, and ▮▮▮ the jury imposed the minimum. Clearly the prosecution was under the latter section and appellant's tendered instruction A was properly refused.

▮ Appellant's stressed assignment No. 5 is that the trial court erred in forcing appellant to trial without giving him time to get his witnesses Jones and Wilson residing at specified addresses in St. Louis. These two men were in the automobile with the appellant at the time of the commission of the alleged crime, and it was averred in his application for a continuance that either or both would testify the prosecuting police officer did not "step in front of" the automobile; nor did appellant direct it toward him; but the officer without demanding that it halt, shot at the car as it passed him.

At the hearing on appellant's verified application for a continuance, on November 15, 1948, it was shown by the State that the case was first called for trial on May 24, 1948, and was set over at appellant's request to June 14. Appellant then asked a further continuance to the next setting, and it was peremptorily set for October 18. At that time appellant's counsel asked additional delay for personal reasons, and promised to be ready on November 15. On that date the application here under discussion was filed and heard. Appellant's counsel stated the two witnesses sought had been subpoenaed on "copy service" (meaning by leaving copies thereof at their residences) for the previous trial date, June 14. They were similarly subpoenaed again on November 12 for November 15, but did not appear. The prosecutor offered to permit that part of the verified motion for continuance stating what the testimony of the two missing witnesses would be, to be read at the trial. Appellant's counsel refused, and the court at 2 p. m. overruled the application, stating the case had been called at 10 o'clock that morning, but that appellant had done nothing to assist the sheriff in serving the subpoenaes. Appellant's counsel stated he had been busy in three other courts that morning in cases involving non-trial matters.

In appellant's brief here two cases are cited, holding that where counsel for a party have used due diligence in unsuccessfully endeavoring to procure the attendance of a material witness at a criminal trial, it is not a valid substitute for the witness' appearance and testimony merely to permit counsel to read what the witness allegedly would swear to, if present, from a verified application for a continuance. State v. Warden, 94 Mo. 648, 8 SW. 233; State v. Loe, 98 SW. 609, 612(2-3). In the Loe case, there had already been one postponement. But in the instant case there had been three contin-

uances or postponements; the witness lived in the city; and there seems to be a question as to whether the appellant had used due diligence in seeing that the subpoenaes had actually been served on the witnesses. There are a great number of decisions holding the matter of granting or refusing continuances is addressed largely to the sound discretion of the trial court—so many of them that we need only cite 9 West's Mo. Dig., p. 281, § 586, "Criminal Law". We think we should defer to the trial court's discretion in this instance, and overrule the assignment.

 Turning back now to the six assignments of error in appellant's brief which his counsel did *not* stress, but also did not waive. Assignment 2 complains of the admission of the testimony of the three officers who arrested appellant. At the beginning of this line of testimony appellant's counsel objected to proof of the details of the arrest at a place remote from the scene of the alleged crime, saying the *fact* of the arrest was conceded. The court limited the testimony of the first officer (who was the driver of the police car) to the facts: that he had heard the police radio broadcast concerning the alleged crime and about the time thereof (3:30 a. m.); that from the description therein of the automobile allegedly involved he tentatively identified the automobile appellant was driving at a distant place on Page Avenue; and that he followed it, and his crew made the arrest. There was no objection to the testimony of the third officer.

The direct and cross-examination of the second officer of which complaint is made, elicited the following. Appellant's automobile when first hailed failed to stop even after the police car started in pursuit and drew alongside. This officer then drew his pistol. When appellant's automobile did halt he (the officer) went to the left front door thereof with pistol in hand. The driver (appellant) was crouched on the car floor and had a ball pin hammer in his hand. He (the officer) struck appellant in the ribs and the latter went to the ground as he emerged from the car. He was also arrested on a city charge for resisting an officer. The hammer appellant allegedly had was not produced in the trial of this case or (apparently) in the trial of the police court case.

We think the fact that appellant when on trial admitted his arrest at the time and place claimed by the State, did not make the foregoing evidence incompetent. Proof of flight, resisting or attempting to escape arrest, and possession (and all the more threatened use) of a weapon (the hammer) at that time, are held competent, as bearing on the question of his guilt or innocence, even though the weapon was not used in the perpetration of the alleged crime. 16 C. J. § 1063, p. 551; § 1070, p. 553; § 1225, p. 619: 22 C. J. S. § 625, p. 956; § 628, p. 962; § 712c, p. 1212: State v. Davis, 337 Mo. 404, 410, 84 SW. (2d) 633, 636(3); State v. Walker, 357 Mo. 394, 400(1),

208 SW. (2d), 233, 236(1); State v. Richetti, 342 Mo. 1015, 1033-4(5), 119 SW. (2d) 330, 339(10).

■ Assignment of error 3 was substantially a repetition of assignment 1 and need not be further noticed. Appellant's brief concedes assignment 6 was covered by assignment 5. Assignment 7 charges error in permitting the assistant circuit attorney on cross-examination of the appellant "to pit the testimony of the State's witnesses against that of the appellant by way of relative comparison, as to which one was telling the truth." This assignment is very indefinite, but we have reread the cross-examination of the appellant and find the assistant circuit attorney did frame questions based on what the testimony of the prosecuting or testifying officers had been, and then asked the appellant what his version was on the same point. We see nothing wrong in that. In fact it was more favorable to appellant than if his attention had not been called to the previous testimony, and an effort had been made to trap him into some unwary statement. No authorities need be cited on this point.

■ Assignment 8 charges sarcastic and unfair closing argument of the assistant circuit attorney. No instances are specified. We find four objections by appellant's counsel to the State's closing argument. The first was when State's counsel said appellant "put up a fight." Appellant's counsel objected that there had been no fight. This seemingly referred to the testimony that the appellant started to get out of the automobile with a hammer in his hand, and one of the officers hit him in the ribs. The court told the jury to be guided by the evidence. The second objection was when State's counsel referred to appellant's counsel's asking "where is the hammer?" and then added no request had been made for it up to that time. Appellant's counsel replied it was not incumbent on him to ask for the hammer. The third objection was when State's counsel argued "if the element of accident were involved" when appellant's automobile struck the prosecuting police officer, "the appellant would not be in court today." Appellant's counsel objected "to the form of that statement." The fourth objection was when State's counsel said "the only thing for the jury to decide was whether the appellant or the four police officers were telling the truth." Appellant's counsel objected that that was not a proper statement. We find no reversible error in any of this.

■ The 9th assignment is that appellant in this State prosecution was twice put in jeopardy on the same facts, because he had also been prosecuted on them in the City courts. Under the general rule here and elsewhere this does not constitute double jeopardy, because the two jurisdictions are different, and a prosecution under a municipal ordinance is generically civil and not criminal. 16 C. J.

§ 480, p. 281-2; 22 C. J. S. § 296b, p. 449-50; State v. Muir, 86 Mo. App. 642, affirmed 164 Mo. 610, 65 SW. 285; State v. Mills, 272 Mo. 526, 537(4), 199 SW. 131, 134(4); State ex inf. McKittrick v. Graves, 346 Mo. 990, 1001(7), 144 SW. (2d) 91, 97(15).

For the foregoing reasons stated the judgment is affirmed. All concur.