**CITY OF INDEPENDENCE, Respondent,**

v.

**Clarence STEWART, Appellant.**

**No. 24278.**

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1965.

George M. Hare, Keith Wilson, Jr., Independence, for appellant.

S. Ralph Stone, City Counselor, Kenneth H. Taylor, Asst. City Counselor, Independence, for respondent.

MAUGHMER, Commissioner.

The defendant, Clarence Stewart, was convicted for violation of an ordinance of the City of Independence, Missouri. The specific charge was that he "did willfully, wrongfully and unlawfully interfere with officers McPherson and Nicholson while they were performing their duties by resisting arrest". After a hearing in municipal court he was found guilty and a fine of $50 was imposed. Upon appeal to the circuit court he was again adjudged guilty. Punishment was there assessed at a fine of $25 and costs. There was no jury. Defendant has appealed to this court.

There is before us a transcript of the circuit court trial. Officers McPherson and Nicholson and the defendant testified. We shall summarize generally the occurrences which finally culminated in this prosecution and then refer particularly to the testimony of each witness. The difficulty began on October 17, 1964. Defendant admittedly had spent a portion of that day drinking in a tavern. He came to his home at 1223 South Delaware Street, Independence, Missouri, in a taxicab and being without funds, requested his wife to pay the fare. She did so. The record does not reveal in detail what happened immediately thereafter. Defendant says he and his wife had an argument. Mrs. Stewart did not testify but she did call the police, reported that her husband was misbehaving, was mistreating her and requested that officers be sent to their home. Patrolmen McPherson and Nicholson responded to the call and went to the residence of defendant and his wife. Mrs. Stewart came to the door and invited them inside. The officers entered the house. There are two versions as to what transpired thereafter—one as told by the officers and the other as recounted by defendant. We shall present both.

The patrolmen said that upon their entry they found defendant lying on a couch, watching television. Mrs. Stewart, in the presence of defendant, told the officers "her husband had been drinking, came home without his automobile, and that he had made bodily threats against her". Officer McPherson said defendant "got up from the couch, came over, placed his hand on my chest and started to shove me", that he was talking very loud and "cussing both officers", that he asked if we had a warrant and ordered us to leave; that he grabbed "ahold of my lapel" and started "shaking me very hard and very violently". McPherson then pushed defendant across the room and back onto the couch, told him

he was under arrest and resumed his interrogation of Mrs. Stewart. A few minutes later he "heard a scuffle behind my back", turned around and saw defendant "scuffling" with the other officer.

Patrolman Nicholson corroborated the testimony which we have herein attributed to McPherson and in addition made these statements: "We proceeded to put him back on the couch and told him to sit there and that he was under arrest for assault on Officer McPherson". Defendant then got very violent and "grabbed" Nicholson "using awful profanity". Nicholson stated: "At that time I did apply force to him and told him that he was arrested, the second time, for the interference with me, and I walked him out the front door". Mr. Stewart was taken to the police station in handcuffs.

In his testimony defendant stated: "I just got too much to drink, had a taxi take me home, had the wife come out and pay the bill, went back in, and I pulled my shoes off, and laid down on the couch". He said he went to sleep and the next thing he knew the officer jerked him up off the couch and said "What's going on here?". Mr. Stewart asked if "they had a warrant" and asked them to leave, but said he never "cursed, grabbed them or shook them, or pushed them around". He said: "They had me charged with two—had me charged with disturbing the peace. The officer here and the other officer there, they signed a complaint theirself".

Mrs. Stewart apparently relented from her desire for her husband's arrest and prosecution. At least she never appeared at police headquarters to sign a complaint, nor did she testify for or against him at his trial.

Defendant on appeal says the Court erred "In finding the defendant guilty of interfering with officers by resisting arrest, due to the fact *there was no lawful arrest*". Appellant makes five factual assertions, all undisputed, which he says lead to the legal conclusion that there was no lawful arrest. He says, (1) No complaint was filed by Mrs. Stewart; (2) The officers had no warrant for any arrest; (3) Defendant asked if the officers had a warrant; (4) Defendant requested the officers to leave his home, and (5) Defendant was charged and convicted solely of "interfering with officers—by resisting arrest".

■ Our attention is invited to the recent case of State v. Parker, Mo.App., 378 S.W.2d 274, 281, where the generally accepted rule is again restated that an officer "has the right to arrest without a warrant for a misdemeanor only when the misdemeanor is committed in his view or presence". In the Parker case the defendant was charged with and convicted of common assault—a misdemeanor. The Springfield Court of Appeals reversed the conviction and discharged the defendant, holding that where a deputy sheriff—who was the arresting officer and also the prosecuting witness—was about to engage in an affray, not as sheriff, but as a private citizen, the action of defendant in taking him by the arm, not accompanied by force or threat, did not constitute an assault, but rather only mere restraint. The Parker opinion further declares that an arresting officer must give notice "to the person sought to be arrested so as to reasonably convey to that person the knowledge that arrest is sought and intended". The Court further expresses the belief that "in Southern Missouri the words 'son-of-a bitch' when used in an angry manner are considered as 'fighting words' and a breach of the peace likely to produce a more violent breach". We are inclined to enlarge that area so as to include Northern Missouri.

In the case before us the officers were not out on a private mission (as in the Parker case) but appeared in response to a call from defendant's wife for protection and help. They were met at the door by Mrs. Stewart, who identified herself as the person who had called, and invited them to come inside. They were in this house,

which the evidence shows was jointly owned by Mr. and Mrs. Stewart, lawfully by her invitation. They were on the premises as invitees, and not as either trespassers or interlopers.

■ According to the testimony of the officers, which the trial court apparently believed and accepted, and which we must likewise accept on appeal unless it seems to us to be wholly beyond belief, they were attempting to interview Mrs. Stewart as to the details of her complaint, when defendant "grasped the coat lapels and shoved and pushed, scuffled with and cursed" not only one but both of these officers. Defendant said to them "God damn you dirty son-of-a-bitches, you can't come in here". This cursing included the phrase classified in the Parker opinion as "fighting words". The officers then "put him back on the couch and told him to sit there and that he was under arrest for the assault on Officer McPherson". It appears that defendant himself knew and understood he had been arrested, since he testified that they arrested him for disturbance of the peace. Defendant continued his violent misbehavior and was handcuffed for transportation to the police station.

■ We agree with the generalities as to the law of arrests as asserted by defendant. We agree with these quotations from 6 C.J.S. Arrest § 6c(2) (3) (4), which are incorporated in defendant's brief:

"Ordinarily, a peace officer cannot arrest, without a warrant, for a misdemeanor which was not committed in his presence or view".

"A mere suspicion or belief that a misdemeanor has been committed is insufficient to warrant an arrest without a warrant".

"An officer cannot arrest, without a warrant, a person whom he merely believes committed a misdemeanor".

We agree, too, that a citizen may legally within reasonable limits, resist an unlawful arrest, although we do not advocate the practice.

In the case before us defendant was never formally charged with assault or peace disturbance. However, (1) The officers testified that they arrested defendant for assault on Officer McPherson and told him so; (2) Defendant knew he had been put under arrest for his fracas with the officers. He thought it was for disturbance of the peace; (3) While the arrest was for a misdemeanor and not for a felony, it was for a violation committed not only in the presence of the arresting officers but upon their persons, and was therefore lawful; (4) Defendant "resisted this arrest" and "interfered with the officers" to such an extent that force was required to remove him from the house and into the automobile and handcuffs were utilized to keep him submissive. The question is not was he prosecuted for assault or peace disturbance, but was there a lawful arrest and if so, did defendant resist the officers in making that arrest?

It would serve no useful purpose to enter into a discourse upon the following somewhat provocative subjects—(a) every man's home is his castle—it may be a poor hut, which the storm and the rain and the wind and the cold may enter, but the minions of the state may not enter without a warrant; (b) the wise and proper procedure for police officers to follow when harrassed wives call for help and protection in view of their well known proclivity to later on "forgive and forget" their spouse's misbehavior; or (c) the current popular subject of officiousness and police brutality which is a too common modern complaint when officers attempt to enforce the law, maintain order and preserve the peace—publicly or domestically.

■ We believe it is sufficient here to say that there was substantial, credible evidence offered to show that: The officers

were in the home as invitees and not as trespassers, defendant in their presence was guilty of assault upon them and of peace disturbance, he was arrested and was told that he was under arrest for an assault just committed upon Officer McPherson. Defendant resisted his arrest by acts "scuffling and struggling" and orally by cursing. We believe the court was justified and authorized under the evidence in concluding that defendant was lawfully arrested for assault; that he resisted such arrest and, therefore, was guilty as charged.

Defendant on appeal has made no attack on the ordinance or the information. His only assignment is that "There was no law-ful arrest". We rule this point against him under the law and under the evidence.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

CROSS, P. J., HOWARD, J., and DAVID R. CLEVENGER, Special Judge, concur.

BLAIR, J., not participating.