**Billy Joe JACKSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19247.**

United States Court of Appeals
Eighth Circuit.

March 26, 1969.

Rehearing Denied April 18, 1969.

Lewis E. Pierce, of Pierce, Duncan, Beitling & Shute, Kansas City, Mo., for appellant.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee; Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., with him on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

On October 9, 1967, a three-count indictment was returned against Billy Joe Jackson and Chester Carl Barber charging them with April 1967 violations of 18 U.S.C. §§ 2 and 2115 (forcible breaking into a building used in part as a United States Post Office at Preston, Missouri, with intent to commit larceny in the post office), of 18 U.S.C. §§ 2 and 1361 (depredation against government property, with damage in excess of $100), and of 18 U.S.C. § 641 (receipt of government property of a value in excess of $100, with intent to convert it to their own use and knowing it to have been stolen). Counsel was appointed for each defendant. Barber's motion for a severance, under Criminal Rule 14, was granted. Jackson, in the manner pre-scribed by Criminal Rule 23(a), waived his right to a jury trial.

Certain facts were stipulated, with the defense reserving rights to object on grounds of irrelevancy and immateriality, and to assert that specified exhibits, accompanying the stipulation, had been obtained by an unlawful search and seizure. Judge Oliver found Jackson guilty on all three counts. The court imposed sentences of 5 years, 6 years, and 6 years, respectively, all to be served concurrently and also concurrently with any other sentence Jackson was serving, but with the provision, under 18 U.S.C. § 4208(a) (2), that the defendant may become eligible for parole at such time as the board of parole may determine.

Jackson appeals in forma pauperis. He argues that the warrant to search the pickup truck which he was driving when he was arrested was the fruit of an already accomplished unlawful search; that the search was made by state officers before the arrest and thus could not be incident to a lawful arrest; that the arresting officers possessed no authority, under state law, to make the search; and that the arrest was not based on probable cause.

*The facts.* It was stipulated that the building housing the United States Post Office at Preston, Missouri, was forcibly entered the night of April 12, 1967; that a safe therein, valued at $300, was broken open and damaged beyond repair; and that the government property stolen on that occasion included blank money order forms, a metal cash and stamp box, a canvas mail sack, United States Treasury checks, $65.91 in currency and coin, postage stamps, migratory bird stamps, postal cards, stamped envelopes and other items, all specifically described.

The stipulation further recited that Exhibit 6 thereto consisted of a canvas mail sack and its contents seized on April 13, 1967, in executing a search warrant, from a pickup truck owned by Jackson; that among the sack's contents were the blank money order forms de-

scribed as stolen from the Preston Post Office, $60.86 in currency and coin, and a number of other items which had been described as those taken in the Preston burglary; that Exhibit 11 thereto was a cardboard box containing still other items which were inside the sack when it was seized; and that among those items were postage stamps, stamped envelopes, and migratory bird stamps in amounts and denominations precisely coinciding with those taken at Preston.

It was also stipulated that the transcript of proceedings before a United States commissioner and the transcript of proceedings in the district court on the pretrial motion to suppress should constitute a part of the original record and the testimony there regarded as having been given by the witnesses at the trial.

The additional factual material, as revealed by the total record as thus supplemented, is not really at issue. We endeavor to recite it fairly.

Officer Billy Joe Hart of the Clinton, Missouri, police, and another, while patrolling the city by car in the early morning of April 13, discovered an attempted burglary at the Plaza Supermarket some blocks north of the city square. The market's back door had been pried but access was not gained. This was about 2:15 a.m. Hart then checked the nearby Sears Roebuck store and found a door open. He checked the Stayton Chevrolet agency, also nearby, and found its door pried open and the building entered. He and his fellow officer thought they heard footsteps in the building. They radioed for help and remained outside watching the building. In response to their call Missouri State Highway Patrol Trooper Mitchell arrived about 3 a. m. The officers searched the Stayton building but found no one. Mitchell then left.

Hart went off duty at 5 a.m. While leaving in his personal automobile, he passed Mitchell. They conversed and agreed to have coffee at a cafe on the square. Hart then observed a pickup truck in the city square going the wrong way in a one-way lane. He wrote down its license number. The truck had two occupants Hart had not seen before. It had come into the square from the general direction of the burglaries on the north side of the city.

At the cafe Hart told Mitchell about the strangers in the truck driving the wrong way. The cafe's coffee was not yet ready so the two men decided to follow the pickup in Mitchell's patrol car. They met another officer who told them he had seen a blue pickup going toward Kansas City. They caught up with the vehicle a few miles west of Clinton and outside the city limits. Because of existing road shoulder conditions they decided to continue following it to Hartwell and to stop it there. However, before Hartwell was reached, the truck turned left off the highway into the driveway of a farmhouse owned by people named Winkler and stopped. The officers drove in behind but did not block the driveway.

Trooper Mitchell asked Jackson, who was driving the truck, to come back to the patrol car and to produce his driver's license. Officer Hart, at Mitchell's request, asked the passenger, who was Barber, to get out. As Barber emerged Hart observed a canvas bag on the floor of the truck. The truck's door remained open 12 to 16 inches. Mitchell then checked Barber's license. Jackson started to move to the front of the patrol car. Mitchell told him to "stand still". He also instructed Hart "to watch" the two men. Mitchell walked around the pickup and through its open door saw the edge of the sack which was of the type he had "seen in post offices there in Clinton". He lifted the edge and saw a metal box. He looked no further. Mitchell then formally announced that Jackson and Barber were under arrest for investigation of burglary. The officers at the time had not been given permission to search and possessed no search warrant.

Clinton, a city of approximately 7,000 persons, is about 50 miles northwest of Preston, Missouri.

Around 12:30 that morning, and before all this had taken place, Hart had heard a report on the highway patrol radio of a message from the sheriff of adjoining Bates County that a store had been broken into and a black pickup truck had been observed leaving the scene. Hart, however, did not tell Mitchell about this broadcast. Mitchell learned of the Bates County report from the Clinton chief of police about 4:30 that morning after he had left Stayton Chevrolet. He did not personally see the pickup going the wrong way at the square.

After the arrest Jackson turned the truck's keys over to the officers. The vehicle was locked and left in the Winkler driveway. In mid-afternoon a postal inspector and a deputy marshal, armed with a search warrant, searched the truck. This search produced the canvas bag and its contents, and the contents of the cardboard box, all of which obviously connected and incriminated Jackson with the Preston Post Office burglary.

The Winklers had not invited Jackson and Barber into their driveway and did not know the two men.

1. *The arrest and when it was made.* The defense argues that Jackson's arrest was made only after trooper Mitchell had further opened the pickup's door and had lifted the edge of the sack and observed the metal box, and when he announced that the men were under arrest. Thus, it is said, the search preceded the arrest and, as a consequence, was not a search incident to an arrest.

The trial court, however, specifically and contrastingly found that Jackson and Barber had been arrested before Mitchell went to the pickup's door. It found and held that the arrest was made when Mitchell instructed Hart to watch Jackson and Barber, that this was before Mitchell looked into the truck, and that Mitchell's subsequent formal announcement was not determinative as to when the actual arrest took place.

■ We could not hold that Judge Oliver's finding as to this chronology is clearly erroneous and without support in the record. This court, of course, has held on more than one occasion that an officer's stopping of a motor vehicle and making a check of the driver's license may not constitute an arrest in the legal sense. Rodgers v. United States, 362 F. 2d 358, 362 (8 Cir. 1966), cert. denied, 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454; Schook v. United States, 337 F.2d 563, 566 (8 Cir. 1964); Gullett v. United States, 387 F.2d 307, 309–310 (8 Cir. 1967), cert. denied 390 U.S. 1044, 88 S. Ct. 1645, 20 L.Ed.2d 307; Reed v. United States, 401 F.2d 756, 761, n. 3, (8 Cir. 1968). See Dupree v. United States, 380 F.2d 233, 235 (8 Cir. 1967), cert. denied, 392 U.S. 944, 88 S.Ct. 2289, 20 L.Ed.2d 1407.

We said in Schook v. United States, supra, 337 F.2d at 566, "Arrest connotes restraint and not temporary detention for routine questioning." Where, however, there is restraint and a restriction of "liberty of movement", the arrest may be effectuated. Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). And in Reed v. United States, supra, 401 F.2d at 761, this court held that an arrest had been consummated with the effective restriction by the police of the defendant's "liberty of movement". The insignificance of the timing of a formal pronouncement of arrest is demonstrated by the following language from the same page of the *Reed* opinion:

"We are not persuaded by the argument that the search was invalid because it preceded the moment when Officer Blythe formally informed the defendant that he was under arrest. * * * In our view the arrest had been consummated before the search and it was not altered in point of time by anything which was thereafter said or done. Henry v. United States, supra, is apposite. There the officers stopped the automobile, searched it and discovered cartons of merchandise which had been stolen from an interstate shipment. Two hours after the

search and seizure the officers placed the defendants under formal arrest."

We agree with Judge Oliver that the arrest of Jackson was consummated when the two men were standing by the patrol car after their licenses had been examined, and when Jackson moved but was ordered by Mitchell to stop and Hart was instructed to watch the men. It was then that their liberty of movement was effectively restricted. Mitchell's later announcement that the men were under arrest for investigation of burglary merely formalized what already had taken place. There is no merit in the defense chronology argument that the arrest was subsequent to a search. On the contrary, such search as was then made was subsequent to the arrest.

2. *The officers' authority to arrest.* The defense urges that Hart was off duty; that he was a police officer of the city of Clinton; that the arrest took place outside that city's limits; and that an officer of a third-class city, such as Clinton, has authority only within the city. In support of this the defense cites Mo.Rev.Stat. § 85.561 (1959) and Rodgers v. Schroeder, 220 Mo.App. 575, 287 S.W. 861, 863 (1926). To these one might add State ex rel. and to Use of Kaercher v. Roth, 330 Mo. 105, 49 S.W. 2d 109, 110 (1932); City of Advance ex rel. Henley v. Maryland Cas. Co., 302 S. W.2d 28, 31–32 (Mo.Sup. 1957); Hacker v. City of Potosi, 351 S.W.2d 760, 761 (Mo.Sup. 1961).

It is next argued that Mitchell, as a member of the Missouri Highway Patrol, possessed only limited authority under Missouri statutes; that by Mo.Rev. Stat. § 43.200(1) (1959) he had no search or seizure power except to take dangerous weapons from a person under arrest or about to be arrested and except on a public highway of the state; that the search here took place on the Winkler property which was private; that violation of a city ordinance is not a state crime, citing City of Moberly v. Kervin, 234 S.W. 514 (Mo.App. 1921), or a state

traffic offense; and that Mitchell had no power to arrest for a city violation.

Hart's powers of arrest are an immaterial issue here, for the arrest of Jackson admittedly was effectuated not by Hart but by trooper Mitchell. We turn, therefore, to the question of Mitchell's power to make that arrest. Mo.Rev. Stat. § 43.190 (1959) provides that members of the State Highway Patrol, with an exception not here pertinent, are state officers and "shall have the powers * * * vested by law in peace officers except the serving or execution of civil process." They "shall have authority to arrest without * * * process any person detected by him in the act of violating any law of this state." Section 43.180 gives the troopers "full power and authority to make investigations connected with any crime of any nature" and, as well, a peace officer's power and authority when working with a city chief of police. The Missouri Court recognized these statutorily stated powers in State v. Campbell, 262 S.W.2d 5, 8 (Mo.Sup. 1953) and observed, quoting from another source, that "Generally an officer may, without a warrant, arrest a person whom he has probable cause to believe guilty of a felony", and that it was a trooper's duty, when notified of a crime, to investigate and act upon his information. The powers of a Missouri peace officer generally to arrest without a warrant were also mentioned in State v. Berstein, 372 S.W.2d 57, 59 (Mo.Sup. 1963), cert. denied, 376 U.S. 953, 84 S.Ct. 970, 11 L.Ed.2d 972. We referred to these powers in Rodgers v. United States, supra, 362 F.2d at 361, and in Gullett v. United States, supra, 387 F.2d at 308. In Nash v. United States, 405 F.2d 1047 (8 Cir. 1969), this court observed that under Missouri law arrest without warrant for a misdemeanor is not permissible unless committed in the presence of the arresting officer, citing State v. Parker, 378 S.W.2d 274 (Mo. App. 1964), and City of Independence v. Stewart, 397 S.W.2d 765 (Mo.App. 1965).

We should add at this point that we are not impressed with the defense suggestion that the arrest in any event was invalid because it took place on the Winkler driveway rather than on the highway on which Jackson and the officers had been traveling. Clearly, a trooper has the power to arrest on the highways of Missouri. This power would be nullified and rendered meaningless if all a motorist needs to do in order to avoid arrest, when he sees he is followed by a highway patrol vehicle, is to turn off into the next convenient private farmhouse drive. Authority to pursue beyond his district or territory is specifically vested in the trooper by § 43.190, and the powers enumerated in that section and in § 43.180 reveal that the language of § 43.200(1), historically an earlier statute, is not to be restricted to its narrowest possible meaning. Also, it would be unrealistic to confine the trooper's stated authority to the strict public domain and render it inapplicable to the immediate byway where the suspect seeks temporary refuge. We are concerned with an officer's powers and not with the complexities of an international boundary or of something akin to diplomatic sanctuary.

■ We are satisfied, therefore, that Mitchell, as a Missouri Highway Patrol trooper on duty, possessed the power and authority to make the arrest of Jackson without a warrant provided that Mitchell had probable cause to believe Jackson guilty of a felony.

■■ 3. *Probable cause.* This takes us to the central issue. Was there probable cause for Jackson's arrest by Mitchell without a warrant? State law determines the validity of the arrest insofar as it is not violative of the federal Constitution. Miller v. United States, 357 U.S. 301, 305–306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948). The test is whether the facts and circumstances known to the officer would warrant a prudent man in believing that Jackson had committed the offense. Henry v. United States, su-

pra, 361 U.S. at 102, 80 S.Ct. 168; Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Rodgers v. United States, supra, 362 F.2d at 361; Dupree v. United States, supra, 380 F.2d at 235; Theriault v. United States, 401 F.2d 79, 81 (8 Cir. 1968), cert. denied, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792.

■ We have no great difficulty in upholding the trial court's determination that probable cause existed here. The totality of the facts and circumstances is clearly supportive. The trial court credited the testimony of trooper Mitchell as it was entitled to do. Having done so, we have: (1) Mitchell's own awareness of the report of a burglary from adjoining Bates County despite the fact that Hart had not advised Mitchell of the report; (2) the report's reference to a pickup truck leaving the scene without lights; (3) Mitchell's knowledge of the attempted burglary at the supermarket; (4) his knowledge of the break-in at nearby Stayton Chevrolet; (5) the fact that Jackson and Barber, observed by Mitchell and Hart, were unknown to both officers who well knew the Clinton community; (6) the arrival of the Jackson truck from the direction where the Clinton break-ins and attempted break-ins had occurred less than 3 hours before; (7) the wrong way wandering of the vehicle in the square during the early morning hours; (8) Hart's suspicion, communicated to Mitchell, that the men in the pickup might be the Clinton burglars; (9) the truck's return to the north from whence it came; (10) Jackson's sudden turn from the highway as the officers were following him; (11) his decision to turn into the driveway of a farmhouse where the officers knew he did not live; (12) Jackson's obviously unbelievable explanation that he turned in there to get gasoline; (13) his further statement that he and Barber had been at Pomme de Terre Lake, several miles southeast of Clinton, although they had entered the city from the north; (14) the confirmation, upon Mitchell's examination of Jackson's and Barber's

driver's licenses, that the two men in fact were strangers in Clinton; and (15) Jackson's movement to come around the patrol car. Hart's observation of a canvas bag on the truck's floor is a factor to which we attach no probable cause significance. Mitchell's observation of the same bag and of the metal box and his association of the bag with post office sacks are chronologically subsequent factors which do not enter into the determination of probable cause for Jackson's and Barber's earlier arrest.

■ Having in mind that "probable cause is a practical, nontechnical conception," Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L. Ed. 1879 (1949), Beck v. Ohio, supra, 379 U.S. at 91, 85 S.Ct. 223, these elements all add up, in our view and to our satisfaction, to most adequate probable cause and far above the level of mere suspicion. One could say that the officers would have been derelict in their duty had they not done what they did.

■ We have noted before that probable cause issues are to be resolved upon their particular facts. Pigg v. United States, 337 F.2d 302, 305 (8 Cir. 1964). Facts inevitably vary from case to case, but the following decisions, we feel, are helpful authority here: Rodgers v. United States, supra, 362 F.2d at 361; Dupree v. United States, supra, 380 F.2d at 234; Gullett v. United States, supra, 387 F.2d at 310–311; Kayser v. United States, 394 F.2d 601, 605 (8 Cir. 1968), cert. denied, 393 U.S. 919, 89 S.Ct. 250, 21 L.Ed.2d 206. See also Nash v. United States, supra.

■ The defense emphasizes that at the time of the arrest neither Mitchell nor Hart had any knowledge of the Preston Post Office burglary. But the fact Jackson's arrest was for an offense other than that for which he was later tried, is, of course, not material. Gullett v. United States, supra, 387 F.2d at 310, and cases there cited; Kayser v. United States, supra, 394 F.2d at 605.

We might observe, in conclusion, that we have examined the postal inspector's affidavit submitted in support of the application for the search warrant for the pickup. The affidavit is complete, specific and in detail. It suggests no problem of the kind dealt with in Spinelli v. United States, 393 U.S. 410, 21 L.Ed.2d 637 (1969). Indeed, no claim to that effect is made by the defense here. The defense position is only that the arrest was illegal and that, because of that illegality, the search warrant, the execution of which produced the incriminating evidence, enjoyed no better status.

The judgment of conviction is affirmed.