**UNITED STATES of America, Appellee,**

v.

**Earl Russell BONDS, Appellant.**

**No. 19770.**

United States Court of Appeals, Eighth Circuit.

Feb. 27, 1970.

Victor Packman, Clayton, Mo., for appellant.

Peter T. Straub, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., and Jim J. Shoemake, Asst. U. S. Atty., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is a timely appeal by defendant Earl Russell Bonds from his conviction and resulting sentence on an indictment charging possession of a short-barreled

shotgun in violation of 26 U.S.C.A. § 5841.[1]

Defendant made a motion to suppress a gun taken from a second floor bedroom in his home as evidence upon the ground that it was illegally seized in violation of his Fourth Amendment rights. Such motion was overruled. Defendant waived trial to a jury and was tried to the court. He renewed his motion to suppress and objected to the reception of the gun in evidence upon Fourth Amendment grounds. His objection was overruled. He was convicted.

The only issue presented by this appeal is whether the court erred in refusing to suppress the gun as evidence. It is the Government's contention that the gun was seized incident to a lawful arrest of the defendant. Defendant's primary contention is that the arrest was not lawful because probable cause for the arrest has not been shown. We find no substantial evidence of probable cause for arrest and reverse.

At the hearing on the motion to suppress, only defendant and his wife testified. Both testified the shooting was accidental and that the law enforcement officers were so advised. There was no evidence offered to establish the existence of probable cause for arrest. At the trial, officer Dominick testified. The ruling on the motion to suppress was an interlocutory order subject to change before final judgment. We must look to all the evidence in the record to determine whether probable cause for arrest is established.

On January 9, Mrs. Bonds was shot in the left hand when a shotgun belonging to her husband accidentally discharged while she was handing the gun to defendant to put in a bag. Defendant placed his wife in a cab with directions to take her to the hospital and at his wife's direction went back to the house to take care of their three-year old child.

Mrs. Bonds was hysterical. The taxi driver became frightened and took Mrs. Bonds to a fire station about a block from her home and she was shortly taken to the hospital by ambulance. Mr. Bonds promptly phoned the police and reported the accidental shooting. Policemen in response to a call arrived at the fire station.

Mrs. Bonds testified that she told the officers when they arrived that she had been accidentally shot by her husband and gave her home address and stated her baby was there.

Officer Dominick, accompanied by other officers, went from the fire station to the defendant's residence, displayed their guns, knocked at the door and ordered the defendant to step outside and immediately arrested him for assault. He was not questioned prior to his arrest about the shooting. Shortly thereafter, he was taken to the police station where he was charged with discharging of firearms within the city limits.

The officers immediately after the arrest searched the house and found the gun here involved in an upstairs bedroom on a bed, hidden under bed covers. Two or three of the Bonds children were found in the house and were taken to the station. There is no evidence that the gun was found as an incident to looking after the children.

Officer Dominick in his official report of the incident, which was filed within a few hours thereafter and which is in evidence, stated:

"The undersigned was dispatched to Engine Company No. 2 at Pennsylvania and Olive, where the above victim had gone for help. Upon arrival, it was learned from the victim that she was handing a shotgun to her husband when it accidentally went off. The victim further stated that their children were still at home with her husband. The victim was conveyed to St.

---

1. The crime here charged was committed on January 9, 1969. The applicable statute is 26 U.S.C.A. § 5841 as enacted October 22, 1968, effective November 1, 1968. 82 Stat. 1229. See 26 U.S.C.A. § 5841, 1970 pocket parts.

Louis County Hospital in City Ambulance No. 1, manned by fireman Karas and Linnemeyer, accompanied by Patrolman Gleason. The undersigned proceeded to 1099 Pennsylvania, where Earl R. Bonds was taken into custody for further investigation.

"A check of the house by the undersigned for the weapon used revealed a sawed-off shotgun covered up on a bed in the second floor southwest bedroom, and also a Mossberg .22 caliber rifle in the second floor center bedroom."

As a witness, Dominick testified that he responded to a call about the shooting by going to the fire station and that he there found an hysterical woman who said her husband shot her with a shotgun and that she wanted her children taken out of the house. On cross-examination, he testified as follows:

"Q Did you, in that report, quote Mrs. Bonds as stating that the shooting was accidental?

A I believe I did.

Q And did you hear her tell you that?

A No. She did say it was accidental after—she was pretty hysterical at the time also.

Q But before you went to the home on Pennsylvania Avenue, did you get that ultimate fact, that she did say it was accidental?

A We weren't positive that it was purely accidental.

Q Well, that is your conclusion, and I mean what did she say? That is what I want to get clear.

A What did she say? She said her husband shot her with a shotgun.

Q And did you ask whether it was deliberate or—

A No.

Q——or whether there was a fight?

A No.

Q Wouldn't that be a matter of curiosity to you?

A She also——

MR. SHOEMAKE: I object to it as being argumentative.

THE COURT: All right. I will sustain it as to form.

Q (By Mr. Packman) When did she mention it was accidental?

A She mentioned this at the hospital after talking with an officer. She mentioned it, I believe while she was in the ambulance too."

Both Mr. and Mrs. Bonds have consistently stated that the shooting was accidental and there is no evidence to the contrary.

There is no question that there was a search made and that defendant is entitled to Fourth Amendment protection. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. It is undisputed that the officers had no warrant for the arrest of Bonds or for the search of his home at the time the search was made. The question presented is whether under the facts above related the search of the upstairs bedroom which produced the gun was unreasonable under the Fourth Amendment.

 As a general rule, a warrantless "search" is "unreasonable" under the Fourth Amendment unless the search is within an exception to the warrant requirement. Camara v. Municipal Court, 387 U.S. 523, 528–529, 87 S.Ct. 1727, 18 L.Ed.2d 930; See v. City of Seattle, 387 U.S. 541, 543, 87 S.Ct. 1737, 18 L.Ed.2d 943; Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856: Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514.

 As recognized by the trial court one such exception to the warrant requirement is a search incident to arrest. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. See cases discussed in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. In order for a search incident to arrest to be recognized as an exception to the warrant requirement, two factors must be present: (1) The arrest must be valid under the authority giving the officer

power to arrest. United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210. (2) The arrest must be based upon "probable cause." Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L. Ed.2d 917.

The first factor for determination under the circumstances of this case is whether the police could validly arrest appellant under state law. At the appellant's trial, the court held that the search of his home was justified as incident to his arrest for discharging a firearm within the city limits. This offense is a misdemeanor under Missouri law.

■■■ Under Missouri law, a law enforcement officer does not have authority to arrest a person for a misdemeanor not committed in his presence unless the officer possesses a warrant. State v. Parker, Mo.App., 378 S.W.2d 274, 281; Independence v. Stewart, Mo.App., 397 S.W.2d 765, 767; Jackson v. United States, 8 Cir., 408 F.2d 1165, 1169. Since the arrest for discharging a firearm was for a misdemeanor without a warrant, the trial court erred in upholding a search incident to such arrest. The arrest for this offense was invalid under state law.

■ Under Fourth Amendment theory, however, a reviewing court must make an objective evaluation of the facts and circumstances surrounding the arrest of an individual. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889. Thus, if probable cause exists for the arrest of a person for a felony at the time of the arrest, the search incident to the arrest will be upheld if reasonable in scope, although the officer did not accurately name the offense for which the arrest was made. McNeely v. United States, 8 Cir., 353 F.2d 913, 918; Klingler v. United States, 8 Cir., 409 F. 2d 299, 305–306. See also In re Kiser, 8 Cir., 419 F.2d 1134; United States v. Skinner, 8 Cir., 412 F.2d 98, 102.

■ Missouri law does authorize an arrest without a warrant of any person whom the arresting officer has probable cause to believe committed a felony, even if the felony is not committed in his presence. Nash v. United States, 8 Cir., 405 F.2d 1047, 1050; Mueller v. Powell, 8 Cir., 203 F.2d 797, 800. The concept of probable cause under Missouri law is synonymous with the Fourth Amendment concept of probable cause and therefore, if the police officers had probable cause to arrest appellant for a felony, a search incident to the arrest could be upheld.

The Government urges that the police had probable cause to believe that appellant had unlawfully assaulted his wife in violation of § 559.190 Mo.Ann.Stat., and therefore they had authority to arrest him. Section 559.190 of the Missouri Criminal Code provides:

"Every person who shall be convicted of assault with *intent* to kill or do great bodily harm * * * shall be punished by imprisonment in the penitentiary not exceeding five years, * * *" (Emphasis added.)

We cannot agree that the police had probable cause to arrest defendant for this offense.

The Supreme Court in Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, indicated that the question of probable cause for arrest turned upon whether:

"[T]he facts and circumstances within [the law enforcement officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." 379 U.S. 89, 91, 85 S.Ct. 223, 225.

It is quite clear in this case that the officers knew that defendant shot his wife. The real question is whether they were reasonable in believing that he had unlawfully shot his wife.

■ Section 559.190 of the Missouri Criminal Code requires that the shooting be intentionally done before it is

deemed unlawful. A mere accidental shooting is not enough.

■ In objectively evaluating the facts in this case, we find nothing in the record from which a reasonably prudent police officer could infer that the shooting of Mrs. Bonds was felonious. The testimony of Mrs. Bonds, that she told the officers who first appeared at the fire station that the shooting was accidental, when compared with the official statement in the officer's report that it was learned from the victim that she was handing the shotgun to her husband when it accidentally went off, is very persuasive on the issue that the officer knew before the arrest that the victim considered the shooting accidental. Moreover, if the victim did not in fact then say the shooting was accidental, the officer admits that he made no inquiry as to the facts surrounding the shooting and no reason appears why such inquiry should not have been made. The arresting officer gave the defendant no opportunity to explain the circumstances before making the arrest.

The mere fact that a person is shot does not support an inference that the shooting was intentional and unlawful. We find no facts in the record to support a reasonable belief on the part of the arresting officer that the shooting of Mrs. Bonds was intentional. The fact that Mrs. Bonds told the police officers that she wanted her children taken from her home does not add a sufficient basis to raise the officers' suspicions to probable cause that a felonious assault was made.

■ We believe sufficient basis existed for the officers to go to defendant's home to investigate the shooting and to check upon the welfare of the children. In the absence of probable cause for arrest, officers have a right under appropriate circumstances to stop and interview a person for purposes of investigation. In such a situation, a limited exception to the search warrant requirement exists allowing officers to search the person and immediate vicini-ty for weapons where the officers have reason to believe their safety is endangered. Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889; Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917. This has always been a strictly limited right. As stated in *Terry*:

"The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." 392 U.S. 1, 29, 88 S.Ct. 1868, 1884.

In Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685, the Court holds:

"Only last Term in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, we emphasized that 'the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure,' *id.*, at 20, 88 S.Ct. at 1879, and that '[t]he scope of [a] search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible.' *Id.*, at 19, 88 S.Ct. at 1878. The search undertaken by the officer in the 'stop and frisk' case was sustained under that test, because it was no more than a 'protective * * * search for weapons.' *Id.*, at 29, 88 S.Ct., at 1884. But in a companion case, Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, we applied the same standard to another set of facts and reached a contrary result, holding that a policeman's action in thrusting his hand into a suspect's pocket had been neither motivated by nor limited to the objective of protection. Rather, the search had been made in order to find narcotics, which were in fact found."

■ In our present case, no reasonable justification existed for the search of the upstairs bedroom under the

search incident to "seizure for investigation" exception to the search warrant requirement. Defendant was seized outside his home and was confronted by a group of armed officers. He offered no resistance. The safety of the police officers required no search of the upstairs. Such search was unreasonable and in violation of defendant's Fourth Amendment rights.[2]

The court erred in denying the motion to suppress the gun as evidence. The judgment is reversed and this case is remanded for further proceedings consistent with the views herein expressed.

BLACKMUN, Circuit Judge (dissenting).

I respectfully dissent.

It seems to me that the key facts, all undisputed, which bear upon the defendant's arrest and the attendant search, are (1) that Mrs. Bonds was shot; (2) that she was shot by her husband; (3) that this information was conveyed immediately to the police by both the defendant and by her; (4) that she was in pain and distress and her left hand was seriously injured from the shooting; (5) that when she arrived by cab at the fire station and was first seen by officer Dominick, she was hysterical; and (6) that she then made repeated references to her three-year-old child and the child's being at home with her husband, and, in her screaming, said, "My baby is there. They are there."

In the face of these facts and the obvious urgency of the moment, what would one expect the police to do? Certainly, they must immediately investigate. Certainly, they must be wary of that weapon. Certainly, they must promptly check the child's need for protection. They may do no less despite the well-known risks of interfering in what may prove to be only a domestic quarrel.

It follows that what the police did was entirely reasonable and appropriate for a day, as this was, prior to the decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Although the offense for which the defendant eventually was booked was a misdemeanor, the actual arrest of Bonds at the door of his house, and upon his denial of any knowledge of any shotgun, all the testimony indicates, was for assault, presumably in violation of Mo. Rev.Stat. § 559.180 or § 559.190, a crime which, in either case, is clearly a felony under Missouri law. Mo.Rev.Stat. § 556.-020 and § 556.040; State v. Garner, 360 Mo. 50, 226 S.W.2d 604, 606 (1950). Thus the test is whether the arresting officers had probable cause to believe that a felony had been committed by Bonds and whether the search at the time of the arrest was reasonable.

For me, the answer to this question is definitely in the affirmative. The victim's information as to the identity of the assailant and the infliction of her injury by gunshot, her bleeding, her seriously injured left hand, her hysteria, and her expressed and anxious motherly concern for a small child left in the house with the armed assailant-husband add up to probable cause for the arrest and to reasonableness of the search. The situation gave every appearance of assault with a dangerous weapon.

Perhaps a comment or two as to the testimony is in order:

1. Both Bonds and the victim at the hearing on the motion to suppress, and she at the trial, testified that the shooting was "accidental" and that it was so described to the police. As the majority point out, arresting officer Dominick in his after-the-event official report also

---

2. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, strictly limits the scope of the search in situations where the search is an incident to a lawful arrest. The Government concedes that the search here made would be unreasonable under Chimel. We need not here reach the issue of whether Chimel should be applied retroactively. Prior to Chimel, the right to search in "seizure for investigation" cases where no probable cause for arrest existed has always been more restrictive in scope than searches made incident to lawful arrest.

used that description. But Dominick in his testimony at the trial very specifically does not go that far. He acknowledges only, "She said her husband shot her with a shotgun." He stated, in explanation of the report, that at the hospital and in the ambulance she described the shooting as accidental; that, however, he did not hear her so describe it; and that what he put in the report is what someone else told him. In view of this testimony, I cannot conclude that the district court was unjustified in accepting Dominick's version as to the victim's utterances to him in the immediate hysteria of the incident, rather than the testimony of the defendant and the victim.

2. I find nothing in the record which is convincingly to the effect that the victim was herself handing the gun to the defendant when she was injured. At the hearing on the motion she positively testified:

"He had the gun, and I was telling him to put it in a bag, and he was going to put it away, and I told him to put it in a bag, and I was reaching in the bag with the left hand, and the gun, just that instant, went off."

At the trial on cross-examination of Mrs. Bonds the following took place:

"Q * * * All right. Tell us how you were accidentally shot in the hand.

"A We was upstairs in the bedroom, and he was upstairs with the gun.

"Q Your husband?

"A Right. And there was a bag on the television, and I just reached the bag to tell him to put the gun——

"Q In the bag?

"A Right. And it accidentally went off.

"Q Was he putting the gun away?

"A I don't know. I was just telling him to put it in the bag. I didn't want to see it. I said, 'Put the gun in the bag,' a brown paper bag. This is what I was telling him to do. I was

reaching it to him to put it in the bag.

\* \* \* \* \* \*

"The Court: What preceded your asking him to give you the gun?

"The Witness: I didn't ask him to give me the gun. I told him to put it in a bag."

As I read this testimony in the aggregate, the victim was insisting, or surely urging, that the defendant put the gun out of sight and in the paper bag. She obviously feared the weapon. I interpret her testimony as saying that she was holding the bag, not the gun, and that she placed her hand in the bag to hold it open as a proffered receptacle for the weapon. This coupled with her knowledge, and the defendant's concession, that he had been drinking that afternoon, demonstrates her obvious deep concern and dread. In one sense, any adverse incident can always be described, and frequently is so described, as an "accident." The victim's concern about the gun and her desire to get it out of her husband's grasp negate, in my view, any then conviction on her part that the incident was an accidental happenstance. Certainly, it did not require officer Dominick at that time to relegate it to the category of an unfortunate misadventure and it does not compel us to hold, as a matter of law, that the police had received notification only of an accident and not of anything which could rise to the level of a felonious assault.

Of course, having come this far, I must face the *Chimel* issue. But, in doing so, I find myself in agreement with the Fifth Circuit that *Chimel* is not to be retrospectively applied. Lyon v. United States, 416 F.2d 91, 93 (5 Cir. 1969). Under the law as it stood and had been enunciated in the days prior to the *Chimel* decision on June 23, 1969, the search was reasonable. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

I would affirm.