UNITED STATES ex rel. Edward
LaBELLE, Petitioner-Appellant,

v.

Hon. J. Edwin LaVALLEE, Superin-
tendent, Clinton Correctional Facil-
ity, Respondent-Appellee.

No. 858, Docket 75–2004.

United States Court of Appeals,
Second Circuit.

Argued April 10, 1975.

Decided May 30, 1975.

HAYS, Circuit Judge:

This is an appeal from an order of the United States District Court for the Northern District of New York denying appellant LaBelle's application for a writ of habeas corpus. The district court rejected LaBelle's claims that his arrest was illegal and that evidence seized from his car and apartment was obtained by means of an illegal search. We affirm the ruling of the district court.

LaBelle was originally convicted of murder in the first degree in the Rensselaer County Court in 1964 and sentenced to death. In December, 1968, this Court reversed the conviction, holding that LaBelle was entitled to a new trial because of a *Bruton* violation, see Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), at the original trial. United States ex rel. LaBelle v. Mancusi, 404 F.2d 690 (2d Cir. 1968). At retrial, LaBelle was again convicted of murder and sentenced, on July 2, 1970, to a term of life imprisonment. The Appellate Division affirmed the conviction, People v. LaBelle, 37 App.Div.2d 135, 322 N.Y.S.2d 746 (3d Dep't 1971), and on July 28, 1972, the New York Court of Appeals denied leave to appeal. The issues raised herein were presented to the state courts on a pretrial motion to suppress before the new trial and during the direct appeal. LaBelle is currently serving his sentence in the Clinton Correctional Facility, Dannemora, New York.

Ralph L. McMurry, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., on the brief, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Michael A. Young, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for petitioner-appellant.

Before HAYS, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

I.

On November 30, 1963, the New York police discovered the body of a murder victim, Rosemary Snay, in Rensselaer County. Lieutenant-Supervisor Brandon of the New York Police Bureau of Criminal Investigation was placed in charge of investigating the homicide, and at some point began to suspect Edward LaBelle.

On December 2, 1963, one Mary Dolan, aged fourteen, was referred to Brandon and complained to him that she had been assaulted by two men on the same day

and in the same area where the Snay murder had occurred. In her unsworn statement to the police, Dolan described the two men and the car in which they were riding. She stated that as she was walking home, the men made repeated attempts to get her into their car, one occupant twice emerging from the car and physically grabbing her. Dolan evaded her assailants and, after pretending to enter one home, ran to a house with its lights on, where she stood. The men continued to pursue Dolan, parking nearby and turning off the car lights. Soon afterward, the car started up again and drove slowly past Dolan at which time Dolan took down the vehicle's license number. Several minutes later some of Dolan's friends drove by in a car and Dolan joined them. They pursued the car that had been following Dolan, and pulled alongside it at a red light. One of Dolan's friends, Richard Smith, who apparently recognized the driver as LaBelle, whom he had known previously, asked the occupants of the car why they had tried to pick up Dolan. The occupants denied trying to grab Dolan, and when the light changed drove away.

On the basis of Dolan's information, Lt. Brandon telephoned Detective Leo Barry and asked him to apply to a magistrate for two "John Doe" arrest warrants charging the misdemeanor of assault in the third degree. Barry obtained the arrest warrants from a magistrate.[1] Brandon gave the warrants to Officers Keating and Garrett for execution, and on December 3, 1963, Keating and Garrett arrested LaBelle. They testified at the suppression hearing that they first spotted LaBelle as he was getting into his car and that they followed his car in their own vehicle, awaiting an opportunity to execute the warrant. According to their testimony there was a great deal of ice and snow on the road

and LaBelle's car, having bald tires, skidded and came to a halt on a hill. Keating and Garrett pulled up behind LaBelle's car and arrested him for assault. They notified police headquarters of the arrest of LaBelle and the location of his car, and received instructions to remain at the scene until another investigator, Officer White, arrived. When White came, Keating and Garrett took their prisoner to the station, leaving White at the scene. Because of the icy condition of the road, White checked to see if the handbrake of petitioner's car was on. As he did so, White noticed what appeared to be bloodstains on the dashboard. White called Lt. Brandon who sent a tow truck to the scene. The car was towed away to police facilities where it was searched. The search revealed several items of highly incriminating evidence linking LaBelle to the Snay murder. The bloodstain and other stains in the interior of the car were analyzed and found to match the blood type of the murder victim. The search also disclosed several hairs of the same type as the victim's, a zipper talon which fit the zipper on the victim's pants, and part of a brassiere strap which fit a missing part of the victim's brassiere. A search of the car's trunk disclosed a crowbar and hatchet, both of which contained blood and hairs of the same type as the victim's. The police, citing the evidence seized in the car, then obtained a search warrant to search LaBelle's home, where they seized clothing owned by LaBelle which contained human bloodstains and soil of the same metallic composition as the soil where Snay's body was found. Some seventeen hours after his arrest, LaBelle was arraigned for the Snay murder.[2]

The trial court denied LaBelle's motion to suppress, holding that there was ample testimony justifying the seizure of

---

1. The warrants were subsequently held to be invalid. See Part II, infra.

2. LaBelle was not arraigned on the misdemeanor charge until five years later, after LaBelle's counsel moved to dismiss the outstanding assault charge for lack of prosecution.

The Appellate Division granted LaBelle a writ of habeas corpus, holding that he had been denied his right to a speedy trial on this charge. See People ex rel. LaBelle v. Harriman, 35 App.Div.2d 13, 312 N.Y.S.2d 623 (3d Dep't 1970).

the car and that the removal of the car to the police garage to be searched was justified by the fact that it would have been difficult to search the car on the road where the arrest occurred. The trial court did however charge the jury that both the arrest warrant and petitioner's arrest were illegal.

On appeal, the Appellate Division agreed that the arrest warrant on which LaBelle was arrested was invalid, but found the arrest to be lawful as one based on probable cause. People v. LaBelle, *supra,* 322 N.Y.S.2d at 748. The Appellate Division further held that once Officer White had observed what he believed to be a bloodstain on the dashboard, the police had, independent of the arrest, probable cause to search the car in connection with the Snay murder. Id. at 748–50. The New York Court of Appeals denied LaBelle permission to appeal.

The district court adopted the findings and analysis of the Appellate Division and denied petitioner's application for a writ of habeas corpus. We affirm the order of the district court.

## II.

 We consider first appellant's claim that his arrest was illegal and that therefore the initial warrantless seizure of his car cannot be justified as incident to a lawful arrest. See, e. g., Ker v. California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653 (1950). In determining the validity of LaBelle's arrest, we must look to the applicable state law, in this case the law of the state of New York. Ker v. California, supra, at 37, 83 S.Ct. 1623; United States v. Di Re, 332 U.S. 581, 589–90, 68 S.Ct. 222, 92 L.Ed. 210 (1948). We agree that the "John Doe" arrest warrant for misdemeanor assault on which the officers based their arrest of LaBelle was invalid under the New York law then in effect because the

underlying papers were unsworn and otherwise technically deficient. See Code of Crim.Proc. § 148 (McKinney Supp.1967).[3] However, we hold, as did the Appellate Division, that LaBelle's arrest, although made pursuant to an invalid warrant, is nonetheless lawful because it was supported by probable cause independent of the defective warrant. See Draper v. United States, 358 U.S. 307, 310–11, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Mayer v. Moeykens, 494 F.2d 855, 858 (2d Cir.), cert. denied, 417 U.S. 926, 94 S.Ct. 2633, 41 L.Ed.2d 229 (1974); United States v. Fachini, 466 F.2d 53, 57 (6th Cir. 1972); United States v. Wilson, 451 F.2d 209, 214–15 (5th Cir. 1971); Chrisman v. Field, 448 F.2d 175, 176 (9th Cir.), cert. denied, 409 U.S. 855, 93 S.Ct. 192, 34 L.Ed.2d 99 (1971); United States v. Hall, 348 F.2d 837, 841 (2d Cir.), cert. denied, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965).

 We start from the premise that "[t]he rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating . . . often opposing interests." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). The test to be applied is whether the facts available to the officers at the moment of the arrest were "sufficient to warrant a prudent man in believing that the petitioner had committed . . . an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The assessment by the courts is to be made on the basis of the collective knowledge of the police rather than on that of the arresting officer alone. United States v. Canieso, 470 F.2d 1224, 1230, n.7 (2d Cir. 1972); Smith v. United States, 123 U.S. App.D.C. 202, 358 F.2d 833, 835 (1966), cert. denied, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967); Williams v. United States, 113 U.S.App.D.C. 371, 308 F.2d 326, 327 (1962). In this case, Mary Do-

---

3. The trial judge charged the jury that the arrest warrant was invalid. The prosecutor took no exception. The Appellate Division also found the warrant to be invalid. See 322 N.Y. S.2d at 748.

lan had communicated the details of the assault to the police. She had provided descriptions of her assailants and a description of the car in which they were riding. Dolan's description of the car included the license number, found to belong to a car registered to petitioner.[4] We believe that under all the circumstances of this case, these facts in conjunction with other information known to the police are sufficient to support the state court's finding that there was probable cause for petitioner's arrest.[5]

LaBelle argues that even if the police possessed knowledge constituting probable cause, his arrest cannot be justified on that basis because the invalid warrant of arrest was for the misdemeanor of assault in the third degree, and under the New York law applicable at the time of LaBelle's arrest, an arrest for a misdemeanor could not lawfully be based on probable cause alone without a warrant where the misdemeanor occurred outside the presence of the arresting officer. See Code of Crim.Proc. § 177 (McKinney Supp.1967); People v. Dority, 282 App.Div. 995, 125 N.Y.S.2d 526 (3d Dep't 1953). See also Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). However, the fact that the police labeled the offense for which petitioner was arrested as misdemeanor assault is not dispositive of the issue of the legality of the arrest. United States v. Bonds, 422 F.2d 660 (8th Cir. 1970); Chaney v. Wainwright, 460 F.2d 1263 (5th Cir. 1972) (per curiam). See also United States v. Dunavan, 485 F.2d 201, 205 (6th Cir. 1973); United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973); United States v. Smith, 468 F.2d 381, 383 (3d Cir. 1972); Klingler v. United States, 409 F.2d 299, 305–06 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969). The principle to be applied in determining the validity of a warrantless misdemeanor arrest for an offense committed outside the arresting officer's presence made in the face of a state law which permits such arrests only if the crime was committed in the officer's presence has been set forth in United States v. Bonds:

"Under Fourth Amendment theory, however, a reviewing court must make an objective evaluation of the facts and circumstances surrounding the arrest of an individual. See Terry v. Ohio, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889]. Thus, if probable cause exists for the arrest of a person for a felony at the time of the arrest, the search incident to arrest will be upheld if reasonable in scope, although the officer did not accurately name the offense for which the arrest was made."

422 F.2d 660, 664 (8th Cir. 1970). See also Chaney v. Wainwright, 460 F.2d 1263 (5th Cir. 1972) (per curiam) (warrantless arrest for misdemeanor of damaging telephone equipment upheld because arresting officers had probable cause to arrest defendant for possession of burglar tools, a felony).

Applying the principle of *Bonds* and *Chaney* to the case at bar, we are convinced that the police had probable case to arrest petitioner for a felony. Petitioner's repeated forcible attempts to take Mary Dolan "for a ride" as described in Dolan's statement to the police evinced sinister designs by petitioner and his companion and gave police probable cause to arrest petitioner for the felonies of assault in the second degree[6] and attempted kidnapping.[7]

4. There is also evidence that one of Dolan's rescuing companions, Richard Smith, had identified LaBelle as one of Dolan's assailants. However, conflicting claims as to precisely when this information was communicated to the police are not resolved by the record.

5. In view of our holding that there was probable cause to arrest LaBelle for his conduct toward Mary Dolan, appellant's assertion that the arrest was a mere pretext for the purpose of enabling the police to search his car for evidence relating to the Snay homicide is clearly without merit. See Klingler v. United States, 409 F.2d 299, 305 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969).

6. Section 242(5) of former Penal Law of 1909 (McKinney App.1967): assault "with intent to commit a felony".

7. Section 1250(1) of former Penal Law of 1909 (McKinney App.1967): " . . . wilfully: (1)

We hold therefore that even if a warrant was required for an arrest for the misdemeanor of third degree assault, LaBelle's arrest was lawful because his conduct toward Mary Dolan, despite its being labeled a misdemeanor by the police, gave sufficient probable cause to believe he had committed a felony. We note however that even had we reached the opposite result with respect to the legality of the arrest, we would nonetheless uphold the validity of the search of LaBelle's automobile. See Part III, infra.

### III.

The search of LaBelle's car was lawful.[8] There can be no doubt that Officer White's discovery of the bloodstains in the car was pursuant to a legitimate intrusion. The car, because of its bald tires, had come to a stop on a steep incline on an icy road in the center of the traffic lane. White's checking to see if the brake was on in the unoccupied car was a simple and necessary safety precaution which was clearly justifiable as part of the police "community caretaking function" without regard to the lawfulness of LaBelle's arrest. See Cady v. Dombrowsky, 413 U.S. 433, 441–443, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). It is equally clear that incriminating evidence inadvertently coming into plain view pursuant to an initial lawful intrusion is subject to seizure. Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (per curiam). See Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This is exactly the case here with respect to the bloodstain on the dashboard noticed in plain view by Officer White while he was properly making sure that the car's brake was on.

Once the police observed the blood-stained interior of the car, they were justified in linking together the attempted assault of Mary Dolan and the consummated assault of Rosemary Snay since both crimes involving attacks on young girls occurred in the same area and within a short space of time. Viewed in the context of the well-established rule that the test of reasonableness of an intrusion under the Fourth Amendment is different for cars than for stationary areas, given the mobility of cars, Cardwell v. Lewis, 417 U.S. 583, 589–90, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); Chambers v. Maroney, 399 U.S. 42, 50–51, nn.8 & 9, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Chimel v. California, 395 U.S. 752, 764, n.9, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Preston v. United States, 376 U.S. 364, 366–67, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925), these facts were certainly sufficient to give the police probable cause to search LaBelle's automobile.

The removal of the car to a police garage was reasonable in view of the icy conditions of the road and the car's position on the inclined highway. The Supreme Court has specifically upheld such removal where safety and other practical considerations are involved. Chambers v. Maroney, supra, 399 U.S. at 52, n.10, 90 S.Ct. 1975 (1970). Furthermore, it was not necessary to obtain a warrant to search the car even though petitioner was in custody. This is not a case like Coolidge v. New Hampshire, supra, in which the car was parked on defendant's driveway so that the seizure

---

seizes, confines, inveigles, or kidnaps another, with intent to cause him, without authority of law, to be confined or imprisoned within this state . . . or in any way held to service or kept or detained, against his will."

Section 1250(2): " . . . leads, takes, entices away, or detains a child under the age of sixteen years, with intent to keep or conceal it from its parents, guardian, or other person having the lawful care or control thereof."

The attempt to commit the crime of kidnapping would of course be a crime. Section 260, Penal Law of 1909 (McKinney App.1967).

8. LaBelle has also attacked the search of his apartment as illegal. The validity of the search of LaBelle's home hinges on the legality of the search of the car, since a search warrant was obtained and the only question is whether the evidence obtained from the car which provided the basis for the warrant was tainted. Appellant concedes that if the search of the car was legal, the search of the apartment was valid as pursuant to a search warrant.

of the automobile required an entry upon private property. Rather here, as in Chambers v. Maroney, supra, and in Cardwell v. Lewis, supra, the automobile was seized from a public place where access was not meaningfully restricted. See Cardwell v. Lewis, supra, 417 U.S. at 593, 94 S.Ct. 2464. Under such circumstances, the Supreme Court has made it clear that the lack of a warrant to search the impounded car does not invalidate the search:

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

Chambers v. Maroney, supra, 399 U.S. at 52, 90 S.Ct. at 1981.

The order of the district court is affirmed.