**UNITED STATES of America, Plaintiff,**

v.

**Benjamin CARR, Jr., Defendant.**

**Crim. No. N–77–106.**

United States District Court,
D. Connecticut.

March 9, 1978.

Michael Hartmere, Asst. U. S. Atty., Richard Blumenthal, U. S. Atty., New Haven, Conn., for plaintiff.

John Williams, New Haven, Conn., for defendant.

RULING ON MOTION TO SUPPRESS

DALY, District Judge.

Defendant, Benjamin Carr, Jr., is charged with receiving three shotguns and one rifle

in violation of § 902 of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 922(h)(1). This statute prohibits convicted felons from receiving firearms that have crossed state lines.

On August 17, 1976 the New Haven Police arrested defendant on charges of reckless endangerment. After the arrest, the car in which defendant was riding was searched and the shotguns and rifle were found. In the period that followed defendant made several inculpatory statements concerning his ownership of the seized weapons. The details of the complex factual pattern on which this decision turns are considered subsequently with the legal analysis.

Defendant moves to suppress both the use of these weapons and his inculpatory statements. The motion to suppress is denied.

## ADMISSIBILITY OF THE WEAPONS

■ The record before the Court contains ample evidence to support the warrantless arrest of defendant and the warrantless search of the car in which defendant was an occupant. It is axiomatic that a warrantless arrest will be upheld where there is probable cause to believe a felony is being committed. *Wilson v. Schnettler*, 365 U.S. 381, 382, 81 S.Ct. 632, 5 L.Ed.2d 620 *reh. den.* 365 U.S. 890, 81 S.Ct. 1025, 6 L.Ed.2d 200 (1961). The test for probable cause is whether the police had within their collective knowledge at the moment of the arrest a sufficient factual basis "to warrant a prudent man in believing that the defendant had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Rosario*, 543 F.2d 6, 8 (2d Cir. 1976). The legal standard controlling the warrantless search of the car in which defendant was an occupant is equally clear. In *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court

explained that although the Fourth Amendment generally requires both probable cause and the issuance of a search warrant, warrantless searches are permissible when there are probable cause and exigent circumstances that justify an immediate search. The Court in *Chambers* found the necessary exigent circumstances where a movable car was stopped on the highway, the occupants were alerted and the car's contents would in all probability never be found again unless seized immediately. *See Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ As was the case in *Chambers* the facts that establish probable cause to arrest defendant in the instant case also provide probable cause to search the car in which he was riding. *Chambers v. Maroney, supra*, 399 U.S. at 47 n.6, at 1976. Defendant's arrest and the search of the car are justified by probable cause to believe that he was violating 18 U.S.C. § 922(h)(1). Furthermore, the record before the Court demonstrates the existence of precisely the type of exigency that justified the warrantless search in *Carroll v. United States, supra*.

The facts adduced at the suppression hearing establish that Officer Mingione, the policeman who arrested the defendant and conducted the search, had a sufficient factual basis on which to conclude that there was probable cause to arrest and to search. Officer Mingione first learned of the car in which defendant was riding in a broadcast over his police radio. The broadcast stated that several blacks had been seen loading weapons into a brown Dodge Challenger. The car was described as having a Connecticut license with the marker number HE 1229. Additionally, he was informed that the car was in the upper Chapel Street area of New Haven. Within fifteen minutes of the police broadcast, Mingione observed a car which fit this description in the same area of New Haven.[1] On approaching the car, Mingione learned that the car's engine

---

1. Although it is not entirely relevant to the existence of probable cause to arrest for illegal possession of firearms and to search for weapons, it should also be noted that the car was sighted under extremely suspicious circumstances. When Officer Mingione first spotted

the car it was directly across the street from a bank and two jewelry stores. The car was "double-parked" in the travelling portion of the road, a driver was behind the wheel and the passenger door was open.

was running and that the defendant was sitting in the rear seat. The officer recognized defendant on sight as a convicted felon and as one of two men who were wanted for a shooting incident that had occurred the previous evening.

In addition to Officer Mingione's personal knowledge, an unidentified member of the New Haven police department interviewed the individual who had initially alerted the police. This interview was conducted prior to the search. In the course of this interview the police obtained an even more detailed description of the car, its occupants and its contents—including the fact that the rifles had been "dumped" into the trunk of the car. This interview also gave the police ample opportunity to learn the witness' identity and to assess his credibility.

These facts not only demonstrate probable cause to arrest and search, but also the existence of exigent circumstances that justify a warrantless search. Before the search of the car was conducted, Officer Mingione had only arrested the defendant and one other occupant of the car. As later discussed, Officer Mingione made these arrests on the basis of charges of reckless endangerment. It was not until after the search that the other occupants of the car were arrested. Therefore, if the search had not been conducted, the car would have been free to depart and the weapons would have eluded the police. It is precisely this type of exigence that the Supreme Court relied on in *Carroll* and *Chambers* to justify

warrantless searches. As the government pointed out in its well-briefed argument, the seizure of a car while waiting for a search warrant is no less an intrusion than carrying-out an immediate, warrantless search. The Supreme Court has explicitly held that once probable cause exists to search, either procedure is reasonable under the Fourth Amendment. *Chambers v. Maroney, supra* 399 U.S. at 51–52, 90 S.Ct. 1975.

An additional factor weighed in this Court's determination of the propriety of the search. Based on the record before the Court, it is clear that the search of the car in this instance constituted a minimal invasion of the defendant's reasonable expectation of privacy. The car had been on a public street and, only minutes before the search, the trunk had been opened and the weapons had been carried through a commercial section of downtown New Haven.

■ Although the facts justify both a warrantless arrest for illegal possession of weapons and a warrantless search of the car for the weapons, the propriety of the arrest and search are complicated by the fact that defendant was actually arrested on the charge of *reckless endangerment.* It is important to emphasize that the charge of reckless endangerment is totally unrelated to the illegal possession of weapons charge. Not only are the factual bases for these charges distinct, but there was no probable cause to arrest on the charge of reckless endangerment.[2]

---

**2.** The factual bases for the charge of reckless endangerment are distinct from the facts supporting the charge of illegal possession of weapons. At the police roll call on the morning of August 17, 1977 Officer Mingione was told that defendant and one of his sons were wanted for reckless endangerment. This charge was based on their alleged participation in a shooting incident that had occurred the previous evening in the Hill District of New Haven. It was later the same day that Officer Mingione received the seemingly unrelated police broadcast concerning a car transporting weapons. According to Mingione's testimony it was not until he approached the car described in the police broadcast that he became aware that defendant might also be involved in this incident. Mingione arrested defendant on sight on the charge of reckless endangerment

in reliance on the order he had been given at the morning roll call.

Under the standard articulated in *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), defendant's arrest on the charge of reckless endangerment was made without the requisite probable cause. In *Whiteley* the Court held that a police officer may rely on a police radio bulletin in making an arrest, but that the arrest would be upheld only if the official who authorized the bulletin had probable cause to direct the arrest. *Id.* at 568–69, 91 S.Ct. at 1037–1038. As the Court stated in *Whiteley,* where the police collectively do not have a sufficient factual basis to establish probable cause, "an illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Id.* at 568, 91 S.Ct. at 1037. *Cf. United States v. Robinson,* 536 F.2d 1298,

■ Defendant contends that his arrest was illegal because Officer Mingione did not have probable cause to arrest on the reckless endangerment charge. This argument is premised on the claim that since Officer Mingione testified that he had arrested defendant for reckless endangerment, the arrest was illegal unless probable cause to arrest *on that charge* is demonstrated. The government does not contend that the arrest is valid on the basis of reckless endangerment, but claims that the arrest should not be declared illegal where probable cause clearly existed to arrest on charges of illegal · possession of firearms. The fact that Officer Mingione arrested defendant on the charge of reckless endangerment does not mean the arrest cannot be upheld on the basis of probable cause to arrest for illegal possession of firearms. In *United States ex rel. La Belle v. LaVallee*, 517 F.2d 750, 754 (2d Cir. 1975), an arrest for assault in the third degree was upheld on the basis of probable cause to arrest for second degree assault and attempted kidnapping.[3] *See United States v. Bonds*, 422 F.2d 660 (8th Cir. 1970) (misdemeanor arrest upheld on basis of probable cause to arrest for felony); *Chaney v. Wainwright*, 460 F.2d 1263 (5th Cir. 1972) (arrest for misdemeanor of damaging telephone equipment upheld because arresting officer had probable cause to arrest for possession of burglar tools, a felony). In *LaVallee* the Second Circuit cited with approval decisions of other circuits that held the validity of an arrest is contingent upon whether the arresting officer actually had probable cause to arrest rather than upon whether the officer articulated the correct basis for the arrest. *See, e. g., United States v. Dunavan*, 485 F.2d 201, 205 (6th Cir. 1973) (arrest on vagrancy charge upheld on basis of probable cause to arrest for bank robbery);

*United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973) (charge of concealing a fugitive upheld on basis of probable cause to arrest for possession of marijuana); *Klingler v. United States*, 409 F.2d 299, 305–06 (8th Cir. 1969), *cert. denied*, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969) (arrest on vagrancy charge upheld because of probable cause to arrest for armed robbery). This Court finds these decisions persuasive. As stated in *United States v. Dunavan, supra* at 205, "This is one occasion where a constable's blunder does not so offend constitutional rights or fundamental justice as to require that a potentially guilty man goes free." Thus, the existence of probable cause to arrest for illegal possession of firearms makes the arrest legal despite the fact that the arresting officer actually made the arrest for reckless endangerment.

## ADMISSIBILITY OF DEFENDANT'S INCULPATORY STATEMENTS

The second question raised by defendant's motion to suppress concerns the admissibility of several inculpatory statements. The admissibility of these statements raises a maze of issues that are best considered by examining each inculpatory statement in chronological order.

Defendant's first inculpatory statement was made after the arrest and search, but before any warnings mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), had been given. According to Officer Mingione's testimony, as soon as the weapons had been seized defendant stated that they belonged to him and that the other occupants of the car should not be arrested. Immediately after defendant made this statement, Mingione indicated to defendant that "it would be wise if he made no further statement" and proceeded to give defendant his *Miranda*

1299–1300 (9th Cir. 1976) (radio dispatcher must have "founded suspicion" that is based on facts supplied to him by reliable informant). The record before this Court is devoid of evidence of any factual basis to support the order to arrest defendant. The conclusory statement made by the officer in charge of the roll call falls far short of an adequate demonstration of probable cause to arrest on the charge of reckless endangerment.

3. Under the applicable state law an arrest for third degree assault committed outside the presence of the arresting officer can only be made after obtaining a warrant. Arrests for second degree assault and attempted kidnapping can be made without a warrant when there is probable cause.

warnings. Defendant argues that his inculpatory statement must be excluded for two reasons: first, he contends that the statement is fatally tainted by the allegedly illegal arrest and search; and secondly, he claims that his Fifth Amendment privilege against self-incrimination requires the exclusion of his statement.

■ Defendant's first inculpatory statement is admissible. As has been discussed, neither defendant's arrest nor the search of the car in which he was an occupant were illegal. However, even if the arrest had been illegal, the statement would have been admissible under the principles articulated in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), because the legal search purged the statement of any taint.[4]

■ Based on the record the Court also finds that the admission of defendant's statement will not violate defendant's privilege against self-incrimination. At the time defendant made his first inculpatory statement, he was entitled to the protection against self-incrimination guaranteed by *Miranda*. *Miranda* made it clear that the rights that derive from the Fifth Amendment attach as soon as an individual is "deprived of his freedom of action in any significant way." *Miranda v. Arizona, supra* 384 U.S. at 477, 86 S.Ct. at 1629. Once these rights attach, *Miranda* requires the exclusion of admissions made without the prescribed procedural safeguards. However, *Miranda* explicitly states that statements "given freely and voluntarily without any compelling influences" are admissible. *Miranda v. Arizona, supra* at 478, 86 S.Ct. at 1630. The record does not contain evidence of any "compelling influences"

that suggest defendant's statement was made involuntarily. Although defendant's statement was made after his arrest for reckless endangerment and after the seizure of the weapons, it is important to note that the statement was not made in response to police interrogation. It was a spontaneous statement motivated by a desire to protect the other occupants of the car. Much like the statement held admissible in *United States v. Vigo*, 487 F.2d 295, 300 (2d Cir. 1973), defendant's statement was compelled by a concern for his companions rather than by custodial interrogation. Such statements are admissible even though *Miranda* warnings have not been given. *See United States v. Vigo*, 487 F.2d 295, 300 (2d Cir. 1973) (Timbers, J., dissenting) (dictum); *United States v. Purin*, 486 F.2d 1363, 1367–68 (2d Cir. 1973); *United States v. Tafoya*, 459 F.2d 424, 427 (10th Cir. 1972); *Pitman v. United States*, 380 F.2d 368, 370 (9th Cir. 1967). *Cf. United States v. Lam Lek Chong*, 544 F.2d 58, 70 (2d Cir. 1976) (statements volunteered at meeting initiated by defendant); *United States v. Gaynor*, 472 F.2d 899, 900 (2d Cir. 1973) (inculpatory statements made in court house elevator to postal inspector who had previously interrogated defendant); *United States v. Maxwell*, 383 F.2d 437, 443 (2d Cir. 1967), *cert. denied*, 389 U.S. 1057, 88 S.Ct. 809, 19 L.Ed.2d 856 (1963) (in-custody statements made to police after arrest and *Miranda* warnings).

■ Defendant's second inculpatory statement is also admissible. After he was given his *Miranda* warnings, defendant again indicated that the weapons were his. He stated further that the weapons had just been retrieved from a local pawn shop

---

4. In *Wong Sun* the Supreme Court enunciated a test for determining the admissibility of evidence obtained after an illegal arrest. Citing Maguire, *Evidence of Guilt*, 221 (1959), the Court in *Wong Sun* stated the admissibility of such evidence turned on whether the evidence had been obtained by exploiting information gathered as a result of the illegal arrest or "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States, supra* at 487–88, 83 S.Ct. at 417. *See Brown v. Illinois*, 422 U.S. 590, 599, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). The Court in *Wong Sun* applied this test to uphold the admission of an exculpatory statement made by one of two illegally arrested defendants because the statement was made several days after the arrest when the defendant voluntarily returned to a narcotics agent's office. Although the factual context of *Wong Sun* is distinguishable, the test articulated in this decision would control the admissibility of defendant's first inculpatory statement if his arrest had in fact been illegal.

and asked the police for an opportunity to go to the pawn shop in order to verify his ownership. Thus, this statement was made voluntarily and as the result of an intelligent waiver of his Fifth Amendment privilege.

The admissibility of defendant's third, fourth and fifth inculpatory statements raise both Fifth and Sixth Amendment issues. At some point after defendant had been informed of his rights, he indicated that he did not want to be questioned concerning the reckless endangerment charges and that he wished to speak with his attorney. Although it is unclear whether this statement was made before or after the trip to the pawn shop, it shall be assumed for the sake of argument that the request was made before visiting the pawn shop. After being transported to the pawn shop pursuant to his request, but before entering the shop, defendant was told that he was under no obligation to verify his ownership of the weapons. However, he again insisted on a chance to prove the weapons were his. Once inside the pawn shop defendant demanded that the pawnbroker explain that the weapons had been left there at an earlier date and that they had recently been retrieved. Defendant was then taken directly to the New Haven police station. At the station his *Miranda* warnings were repeated and he executed a waiver-of-rights form. Defendant then indicated for a fifth time that he owned the weapons and that the other occupants of the car should not be kept in custody. After making this final inculpatory statement, defendant declined to be questioned and repeated his earlier request for an attorney. At this point the questioning ceased, and defendant was permitted to place a telephone call to his attorney.

The Fifth Amendment does not mandate the exclusion of these inculpatory statements. Defendant argues that *Miranda* requires the exclusion of all inculpatory statements made after defendant indicated that he did not wish to answer questions concerning the charge of reckless endangerment. A similar contention was considered and rejected in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

The Court in *Mosley* found inculpatory statements concerning a charge of *murder* to be admissible when made after defendant had been arrested for robbery. In *Mosley* defendant had refused to discuss the robbery charges after being given his *Miranda* warnings. *Mosley* states that the critical procedural safeguard articulated in *Miranda* is a defendant's right to terminate questioning. *Michigan v. Mosley, supra* at 103–04, 96 S.Ct. at 326–327. The arresting officer scrupulously respected this right. After defendant indicated that he did not wish to be questioned concerning the reckless endangerment charges, all questioning related to that charge ceased. The inculpatory statements were not made in response to questioning concerning the reckless endangerment charge; in fact, the statements did not even relate to this charge. Defendant's statements were made voluntarily after he had been given his *Miranda* warnings and the Fifth Amendment does not require their exclusion. *See United States v. Hopkins*, 433 F.2d 1041, 1044 (5th Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1252, 28 L.Ed.2d 550 (1971) (incriminating statements made after refusal to sign waiver form held admissible when interrogating officer attempted to end interview but defendant voluntarily initiated further conversation); *United States v. Thompson*, 417 F.2d 196, 197 (4th Cir. 1969), *cert. denied*, 396 U.S. 1047, 90 S.Ct. 699, 24 L.Ed.2d 692 (1970) (confession made after defendant refused to sign waiver form held admissible where given voluntarily and intelligently).

■ Defendant also argues that the Sixth Amendment prohibits the use of any inculpatory statement made after he requested counsel. It has long been the law that once defendant's Sixth Amendment right to counsel attaches subsequent inculpatory statements are admissible only if the government demonstrates that defendant waived his right to appointed counsel. *Escobedo v. Illinois*, 378 U.S. 478, 490 n.14, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937). Therefore, while the Sixth Amendment imposes a heavy burden on the government, it is not an absolute bar to the admissibility of evidence.

**1390**

■ In the instant case, the right to counsel had attached, but defendant waived this right. Defendant's right to counsel attached when he requested to speak with his attorney. Under the dictates of *Miranda*, this request requires the immediate termination of any interrogation and the exclusion of subsequent statements unless defendant voluntarily elects to waive his right to counsel. *Miranda v. Arizona, supra* 384 U.S. at 475, 86 S.Ct. at 1628. The controlling test for determining whether there has been a waiver is enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461 (1938). It requires the government to prove "an intentional relinquishment or abandonment of a known right or privilege." *Johnson, supra* at 464, 58 S.Ct. at 1023. This test was reasserted quite recently in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In *Brewer* the Supreme Court explained that there are two elements to the *Johnson* test. A waiver of the right to counsel requires both defendant's "comprehension" of his right to counsel and his voluntary "relinquishment" of this right. *Brewer v. Williams, supra* at 404, 97 S.Ct. at 1242.

■ Defendant's inculpatory statements are admissible under both *Miranda* and *Brewer*. The two times defendant requested counsel his questioning was terminated immediately. The more credible evidence indicates that defendant was repeatedly informed of his right to counsel yet persisted in claiming ownership of the seized weapons and insisted on proving his ownership by going to the pawn shop. It is important to emphasize that defendant's insistence continued after he had invoked his right to counsel and that this insistence was in no way elicited by the police.[5] Thus, the Court finds that defendant's statements were made with knowledge of his right to counsel and as the result of a voluntary relinquishment of this right. The Court therefore holds defendant's inculpatory statements are admissible. *See Cobbs v. Robinson*, 528 F.2d 1331 (2d Cir. 1975), *cert. denied*, 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976) (confession held admissible where defendant asked for counsel but then freely abandoned his intent to obtain the aid of an attorney); *United States v. Diggs*, 497 F.2d 391 (2d Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974) (inculpatory statements made outside of appointed counsel's presence held admissible where defendant knowingly waived his right to have counsel present); *United States v. Lewis*, 425 F.Supp. 1166, 1178 (D.Conn.1977) (confession made after arrest and request for counsel found admissible because it was made "voluntarily, knowingly and intelligently"). Other circuits have taken the same position. *See United States v. Cavallino*, 498 F.2d 1200, 1202 (5th Cir. 1974); *United States v. Charlton*, 565 F.2d 86, 91 (6th Cir. 1977); *United States v. Pheaster*, 544 F.2d 353, 366–67 (9th Cir.), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977).

Although defendant's counsel has not raised the point, there is a recent Second Circuit decision that has added a new gloss to the right to counsel. While this decision is not determinative, it merits the Court's attention. In *United States v. Satterfield*, 558 F.2d 655 (2d Cir. 1976), *reh. den.* (1977), the Second Circuit articulated an extremely strict standard for the waiver of the right to counsel. A subsequent decision invoked *Satterfield* as precedent for the proposition that a defendant can waive his right to counsel only after he has been given the same warnings and explanations as are given to a defendant who insists on proceeding *pro se* at trial. *United States v. Miller*, 432 F.Supp. 382, 388 (E.D.N.Y.1977). There is language in *Satterfield* that supports this sweeping rule. However, the Court believes a more careful reading of the opinion

---

5. ˙It is worthy of note that this is not a case involving statements elicited by interrogation. Therefore, neither *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), nor its recent progeny, *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), require suppression. It is beyond dispute in this Circuit that *Massiah* is inapposite when the admissibility of freely volunteered statements is at issue. *See United States v. Lam Lek Chong*, 544 F.2d 58, 70 (2d Cir. 1976); *United States v. Gaynor*, 472 F.2d 899, 900 (2d Cir. 1973).

leads to the conclusion that the standard enunciated in *Satterfield* is limited to cases involving post-indictment inculpatory statements. This reading is based on the fact that *Satterfield* specifically refers to the cases of *United States v. Diggs*, 497 F.2d 391 (2d Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974), and *United States v. Duvall*, 537 F.2d 15 (2d Cir.), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), as being distinguishable on the grounds that they involved statements made after defendant had been arrested, but before he had been indicted. On the basis of this distinction *Satterfield* does not control the instant motion to suppress. *See United States v. Lewis*, 425 F.Supp. 1166, 1178 (D.Conn.1977).

Finally, defendant contends the evidence secured from the pawn shop employees must be suppressed as the fruit of an illegal arrest, an illegal search and illegally obtained statements. This contention merits little attention. Since defendant's constitutional rights were in no way violated, there are no taint problems and any evidence obtained from the pawn shop employees is admissible.

Defendant's motion to suppress is denied in all respects.