UNITED STATES of America, Appellee,

v.

Benjamin CARR, Jr., Appellant.

No. 76, Docket 78–1168.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1978.

Decided Oct. 10, 1978.

---

John R. Williams, New Haven, Conn. (Williams, Wynn & Wise, New Haven, Conn., of counsel), for appellant.

. Michael Hartmere, Asst. U. S. Atty., New Haven, Conn. (Richard Blumenthal, U. S. Atty., D. Conn., New Haven, Conn., of counsel), for appellee.

Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Benjamin Carr, Jr. appeals from a judgment of the District of Connecticut, entered after a jury trial before Judge T. F. Gilroy Daly, convicting him of one count charging him with receipt as a convicted felon of firearms that had been shipped in interstate commerce, in violation of 18 U.S.C. § 922(h)(1),[1] for which he was sentenced to a term of 36 months pursuant to 18 U.S.C. § 924(a). He contends that the judgment should be reversed on several grounds, including inadequate inquiry of jurors to determine possible bias or prejudice, erroneous evidentiary rulings, failure to give a "missing witness" instruction, and the denial of a motion to suppress certain firearms seized from an automobile in which appellant was a passenger. Finding no merit in these contentions, we affirm.

The record, viewed most favorably to the Government at this stage, reveals overwhelming evidence of appellant's guilt. On August 17, 1976, he went to a pawn shop in New Haven, Connecticut, known as De Simone's Jewelers or the Chapel Loan Company, where he redeemed and took delivery of four shotguns and two rifles previously pawned by him. Later that day, John Nilsson, an appliance repairman in the vicinity, advised the New Haven police that he had observed three black men, one of them carrying an armful of rifles and another what appeared to be a musical instrument case, leave a building on Chapel Street, New Haven, with a black woman and dump the guns into the trunk of a dark reddish-brown automobile bearing Connecticut license No. HE 1229. These facts, including a description of the car and its occupants, were then broadcast in an alert to New Haven police cars. Earlier that day New Haven police had been told by their Department that appellant and his son were wanted for participating in a shooting on the previous evening and that warrants for their arrest were being requested.

New Haven Police Officer George Mingione spotted the automobile described in

---

1. Title 18 U.S.C. § 922(h) provides in pertinent part:

    "It shall be unlawful for any person—
    (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, . . . .
    to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

the alert, which was double-parked on Chapel Street. Police then closed in on the car, arrested appellant and his son on charges of reckless endangerment based on the previous night's shooting, removed the car keys from the ignition switch, opened the trunk and removed four shotguns and two rifles. The other occupants of the car were then arrested.

Appellant thereupon volunteered to Officer Mingione that the weapons belonged to him and that the others should not be arrested. After being advised not to make any further statement until he received *Miranda* warnings, which were then given to him, Carr stated that he understood his rights. He repeated that he was the owner of the firearms and had just taken delivery of them from De Simone's, which he asked the police to verify by taking him there. Appellant was again advised of his constitutional rights and taken at his request to De Simone's where Ernest Fiedler, an attendant in the pawn shop, confirmed appellant's statement that appellant had just taken the firearms out of pawn.

Upon being brought to New Haven police headquarters, where he read and signed a waiver-of-rights form, appellant again stated this time to Detective De Nuzzo, that his companions should not be arrested since the guns belonged to him. Questioning was terminated when appellant asked to talk with his lawyer. However, about an hour later appellant asked to see Officer Edward J. Fasano, whom appellant had on an earlier occasion assisted in recovering a gun, and volunteered that he (appellant) was the owner of the guns and had picked them up at a pawn shop before being arrested.

All six weapons seized from the automobile trunk had moved in interstate commerce and were operational. One of the shotguns, a Browning, bore the same serial number as one that had been redeemed by appellant at De Simone's, and one of the rifles, like one of those redeemed, was a .22 caliber.

The indictment, filed on September 7, 1977, charged appellant in one count with unlawful possession of four of the six weap-

ons in violation of § 922(h)(1). Following an evidentiary hearing upon appellant's motion to suppress the weapons and his inculpatory statements made to the police, Judge Daly on March 9, 1978, filed an opinion denying the motions. *United States v. Carr*, 445 F.Supp. 1383 (D.Conn.1978). Judge Daly concluded that although the police did not have probable cause to arrest appellant for the previous evening's shooting incident, they did have probable cause to arrest him for unlawful receipt of firearms in violation of 18 U.S.C. § 922(h)(1) and to search the car in which he was riding for firearms. Accordingly, he ruled that the arrest and search were valid on the latter basis, regardless of the inadequacy of the former, citing *LaBelle v. LaVallee*, 517 F.2d 750, 754 (2d Cir. 1975), and thus rejected appellant's claim that the inculpatory admissions were tainted by an unlawful arrest or search. Judge Daly further held that since the admissions were either volunteered or given after full *Miranda* warnings, they did not violate appellant's Fifth Amendment rights and that they were given after waiver by appellant of his Sixth Amendment right to counsel.

At trial, in response to the overwhelming proof of his unlawful receipt of the firearms taken from the trunk of the car, appellant, testifying in his own defense, asserted that he neither touched nor took possession of the firearms but that they were taken from the pawn shop to the car by his son and nephew. He further denied making the incriminating admissions attributed to him by various witnesses. Appellant's son Dennis and his nephew, James Aiken, corroborated his version by testifying that the weapons had been received by Dennis, not appellant, on August 17, 1976. The jury, however, returned a verdict of guilty.

## DISCUSSION

Appellant first contends that the trial judge committed reversible error in refusing, after all of the defendant's peremptory challenges had been exhausted, to conduct a further inquiry of one juror, Mrs.

Rhoda Podany, the wife of a Bridgeport Police Department detective, regarding her possibly having received information from her husband about the defendant, who had apparently been the subject of publicity years earlier arising out of a 1973 trial for bribery of a police officer and was known as "Fat Daddy." Appellant's suggestion that Mrs. Podany might have heard about the defendant from her husband was based on nothing but speculation. No publicity about the case or the defendant, much less any evidence that her husband knew anything about the defendant, was called to the court's attention.

When the jury was selected no members of the venire (which, having been drawn from Fairfield County, did not include anyone from New Haven, where appellant resides and where the crime occurred) recognized appellant, either in person or by name. Moreover, Mrs. Podany unequivocally stated in response to questioning by the court that her husband's position would not influence her thinking and that she could decide the case fairly and impartially in accordance with the court's instructions as to applicable law. The court, after the jury had been impanelled and sworn, gave the usual instruction that jurors were not to read anything about the case, not to discuss it with anyone and that they were to report to the court any attempted discussion with them by others.

Following a five-day delay before commencement of trial, defense counsel suggested to the trial judge that Mrs. Podany be excused on the ground that her husband might have disclosed prejudicial information about appellant. Judge Daly denied this motion but did inquire of the jurors generally whether anyone had tried to approach any of them since they had been selected, to which no juror responded.

Appellant now contends that in response to his request the court should have further interrogated Mrs. Podany individually or the jury as a group as to whether she or other jurors had recently heard anything about the case or the defendant. As appellant concedes, however, Mrs. Podany "was not presumptively disqualified" from the jury because of her status as the wife of a police detective.[2] As to the conduct of voir dire this is a matter lying within the discretion of the trial court, F.R. Cr.P. 24(a), and the trial court enjoys wide latitude in determining what questions to put to the veniremen. *United States v. Taylor*, 562 F.2d 1345 (2d Cir. 1977), *cert. denied*, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083, 434 U.S. 853, 98 S.Ct. 170, 54 L.Ed.2d 124 (1977); *United States v. Tramunti*, 513 F.2d 1087 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). This discretion is "subject to the essential demands of fairness," 283 U.S. at 310, 51 S.Ct. at 471. Although the trial court might have permitted Carr to seek evidence from Mrs. Podany in an effort to find a basis for disqualifying her for cause, *United States v. Jackson*, 542 F.2d 403 (7th Cir. 1976), or the trial judge might himself have inquired into possible sources of bias, *United States v. Zane*, 495 F.2d 683 (2d Cir. 1974), we cannot say that the court's failure to do so constituted an abuse of discretion. See *United States v. Perry*, 550 F.2d 524 (9th Cir.), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 228 (1977); *United States v. Grant*, 494 F.2d 120 (2d Cir.), *cert. denied*, 419 U.S. 849, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974). Judge Daly had warned the jurors against discussing the case with anyone, and he did ask them, after the five-day interval, whether anyone had approached them about the case. He could reasonably have concluded that under the circumstanc-

---

**2.** The mere fact that a prospective juror is the spouse of a law enforcement official does not establish bias or disqualification from service, *Mikus v. United States*, 433 F.2d 719 (2d Cir. 1970) (former police officer, wife of a state police officer); *United States v. Hurd*, 549 F.2d 118 (9th Cir. 1977) (husband of IRS employee in prosecution for tax evasion); *United States v. Grismore*, 546 F.2d 844 (10th Cir. 1976) (wife of police officer); *United States ex rel. Cooper v. Reincke*, 219 F.Supp. 733 (D. Conn. 1963), *affd.*, 333 F.2d 608 (2d Cir.), *cert. denied*, 379 U.S. 909, 85 S.Ct. 205, 13 L.Ed.2d 181 (1964) (wife of police commissioner).

es this interrogation was adequate to uncover any improper communications about the case, especially since he could personally observe the jurors, including Mrs. Podany.

■ This case is clearly distinguishable from those relied upon by the appellant, where the court ruled that the trial judge was obligated to poll the jury about its exposure to prejudicial communications, since there was no actual evidence that prejudicial communications had occurred outside the courtroom. See, e. g., *United States v. Lord*, 565 F.2d 831, 838–39 (2d Cir. 1977).

Appellant next contends that the trial court erred in restricting his cross-examination of Fiedler, the employee of the pawn shop (De Simone's) who testified that on August 17, 1976, appellant redeemed and picked up the previously-pawned firearms, some of which became the subject of the indictment, and of Officer Fasano, who testified regarding one of appellant's post-arrest incriminating statements. We find no merit in this contention. Although defense counsel is entitled to reasonably wide latitude in testing a witness' credibility by cross-examination, *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the trial judge is also entitled to exercise sound discretion in determining the scope of such cross-examination in a specific case, Rule 611, Fed.R. of Evid.; *Glasser v. United States*, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

■ Defense counsel's effort in the present case to induce Fiedler to characterize his own memory in a conclusionary fashion as not "good" was clearly objectionable. This was an ultimate issue to be resolved by the jury. Likewise it was improper to ask Fasano whether Carr's admitting possession of the guns "would be highly relevant to the case pending against him in the Court of Common Pleas" since this called for a legal conclusion. When the objection was sustained, defense counsel did not attempt to rephrase the question to avoid this problem. Moreover, Carr was not prejudiced by

the exclusion of answers to these conclusory questions, since defense counsel had in previous questions elicited the information that formed the basis for the desired inferences, and later in summation he asked the jury to draw the same conclusion from these relevant facts. Whether or not the trial court acted improperly in terminating as irrelevant further cross-examination of Fasano regarding his failure to inform state prosecutors about Carr's admission, we believe that "the total cross-examination was sufficient to afford the jury a basis to evaluate the defense theory." *United States v. Ong*, 541 F.2d 331, 342 (2d Cir. 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).

Appellant next argues that the Government's efforts to impeach a defense witness by eliciting that he had remained silent about certain evidence prior to trial was improper. After appellant introduced the testimony of James Aiken, who was arrested with appellant and his son on August 17, 1976, to the effect that appellant's son Dennis, rather than appellant, was the person who redeemed the pledged firearms on that date, the Government upon cross-examination sought to impeach Aiken's credibility by eliciting from him that during the 19-month period following his arrest with appellant, Aiken had failed to volunteer this information to the authorities. Appellant contends that this line of questioning was prejudicial to him, since it in effect asked the jury to draw an adverse inference from the invocation of Fifth Amendment rights. See *United States v. Tomaiolo*, 249 F.2d 683, 690–92 (2d Cir. 1957). We disagree.

■ The issue raised by the appellant's contention, however, is not whether this line of questioning infringed the right of Aiken, or of appellant, to avoid self-incrimination. See *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Minor v. Black*, 527 F.2d 1 (6th Cir. 1975). Aiken, not having invoked the Fifth Amendment privilege, was never questioned about invoking it. Moreover, appellant had testified at trial, so there was no danger that cross-examination of Aiken re-

garding his silence would suggest to the jury that the defendant was invoking his privilege. The trial court's decision to allow the cross-examination of Aiken, therefore, was not a constitutional error.

Whether or not the cross-examination of Aiken violated appellant's constitutional rights, he argues that it amounted to an evidentiary error, since Aiken's silence was inadmissible as a prior inconsistent statement. Rule 613, Fed.R.Evid. Some courts have recognized a witness' prior silence as an "inconsistent statement" for impeachment purposes. *United States v. Rice*, 550 F.2d 1364 (5th Cir. 1977), *cert. denied*, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977); *United States v. Standard Oil Co.*, 316 F.2d 884 (7th Cir. 1963). Appellant, on the other hand, cites decisions holding that silence is ordinarily so ambiguous as to lack probative force. See, e. g., *Hale, supra; Tomaiolo, supra;* see also *Victory v. Bombard*, 570 F.2d 66, 70 (2d Cir. 1978) (quoting *Hale* that "in most circumstances silence is so ambiguous that it is of little probative force"). These cases, however, involve situations where, as in *Hale*, the witness was the defendant and had refused to speak in the exercise of his Fifth Amendment rights, or where, as in *Tomaiolo*, the witness was specifically questioned about an express assertion of his right against self-incrimination. In such cases the good faith assertion by a witness of his Fifth Amendment rights would ordinarily preclude an inference of inconsistency.

■ Applying these principles here, although an objection to Aiken's silence during the five or six months prior to dismissal of charges against him may have been upheld on the ground that it was not inconsistent with his willingness to testify at trial, it was not error under the circumstances to admit his silence thereafter as possibly inconsistent therewith and therefore relevant to his credibility. Moreover, aside from Aiken's volunteering at trial that he had no reason to believe that the matter with respect to Carr was being investigated further, defense counsel made no effort to mitigate whatever damage the questioning did to Aiken's credibility. Counsel could, presumably, have elicited from Aiken a further explanation for his failure to volunteer his version of the facts prior to trial. Had counsel done so, we see no reason why the jury would not have assessed fairly the import of Aiken's silence and thus have rendered a reasoned decision as to his credibility. In short, the error, if any, was harmless.

■ We also find no merit in appellant's contention that the defendant was entitled to a "missing witness" instruction based on the Government's failure to call New Haven Police Officer Mingione, who arrested Carr on state charges on August 17, 1976. Since Mingione was not under the Government's control, was equally available to both sides, and his testimony would have been cumulative, the requested instruction was properly denied. See *United States v. DeLutro*, 435 F.2d 255, 257 (2d Cir. 1970), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971). Moreover, the defense was aware on the first day of trial that Mingione would not be called by the Government.

■ Lastly, we find no merit, substantially for the reasons stated by Judge Daly, 445 F.Supp. 1383, in appellant's argument that the weapons should have been suppressed on the ground that the warrantless arrest of appellant on August 17, 1976, and the search of the automobile in which he was a passenger violated his constitutional rights. In considering the issue we proceed on the now well-established premise that the search of an automobile represents an exception to the general presumption against warrantless searches, *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and may be conducted upon a less stringent showing of probable cause than would the warrantless search of a home, *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975,

26 L.Ed.2d 419 (1970); *United States ex rel. LaBelle v. LaVallee*, 517 F.2d 750, 755 (2d Cir. 1975), *cert. denied*, 423 U.S. 1062, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976), principally because of the car's easy mobility and the lesser expectation of privacy on the part of the owner with respect to it than a home or office.

In the present case there was ample probable cause, even applying an "exigent circumstances" standard, for the search and arrest. Nilsson, a disinterested by-stander whose eye-witness account was first verified by a personal police interview, provided a detailed account of his observation of three black men and one black woman loading firearms into the trunk of the automobile on Chapel Street, which he identified in detail. The car was spotted by the police within a short time, double-parked only three blocks from the location where the guns had been loaded, under conditions reasonably justifying a suspicion that a robbery may have been in progress. Two occupants, one of whom, known to the local police, had been convicted of at least two felonies, were wanted for alleged participation in a previous evening's shooting.

These circumstances provided sufficient grounds for the reasonable belief that appellant, a convicted felon, had possession of firearms in the car and for the search of the automobile. Unless the car was searched immediately and appellant arrested, both might disappear. The legality of the seizure and arrest is not affected by the officer's failure to name the correct offense, *United States ex rel. LaBelle v. LaVallee, supra,* at 754, or the fact that the felony was a federal rather than a state one. *United States v. Danesi*, 342 F.Supp. 889, 892, n. 1 (D.Conn.1972). Since the search and arrest were lawful, appellant's various admissions made thereafter were properly received in evidence. Indeed at least some of them would have been independently admissible as volunteered by Carr after being fully advised of his *Miranda* rights. *United States v. Vigo*, 487 F.2d 295, 298–99 (2d Cir. 1973).

The judgment of conviction is affirmed.